# sentencing
# July 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM
PART: 77

-------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

Indictment
No: 2720/2016

-against-

SANJAY TRIPATHY

Defendant.

-------------------------------------------------------------X

100 Centre Street
New York, NY 10013
July 11, 2018

BEFORE: HONORABLE ERICA EDWARDS,
Justice of the Supreme Court

A P P E A R A N C E S:

For the People:
CYRUS R. VANCE, JR., ESQ.
District Attorney, New York County
One Hogan Place
New York, New York 10013
BY: KRISTEN BARAIOLA, ESQ.
SARAH SKUTCH, ESQ.

For the Defendant:
FRANK ROTHMAN, ESQ.
100 Lafayette Street
New York, New York

KATHLEEN MONTEIRO
SENIOR COURT REPORTER

THE CLERK: This is Calendar Number 2, 2720 of 2016 as to Sanjay Tripathy.

Appearances, please.

MS. BARAIOLA: Good afternoon. Kristen Baraiola for the People, and Sarah Skurch.

MR. ROTHMAN: Frank Rothman, 100 Lafayette Street, for Mr. Tripathy.

Good afternoon.

THE COURT: Good afternoon, Mr. Rothman. Good afternoon Mr. Tripathy. Good afternoon, everybody.

So I do want to just say for the record, I'm sorry for everybody who's been waiting from both sides for our Probation Report. We didn't anticipate it, and we should have, so I'm taking full blame for that. I know everybody was here and ready to go, so I apologize for the delay. But we're at this point ready to proceed.

Have both sides had the opportunity to review the Pre Sentence Report as prepared by the Probation Department?

MS. BARAIOLA: Yes.

MR. ROTHMAN: Yes.

THE COURT: Before we get into the actual sentencing portion, I would like, please, to arraign Mr. Tripathy first for sentencing.

THE CLERK: Sanjay Tripathy, you're before the Court for sentencing following your conviction after trial to

Criminal Sexual Act in the First Degree, Sex Abuse in the First Degree, Strangulation in the Second Degree, Assault in the Second Degree and Unlawful Imprisonment in the Second Degree.

Before being sentenced, the Court will allow you, your attorney and the assistant district attorney an opportunity to address the Court with any matter relevant to the question of sentence.

For the People.

THE COURT: Would you like to be heard?

MS. BARAIOLA: Yes, your Honor, the People would like to be heard. Ms. [redacted] would also like to make a statement. I'm going to have her read her statement to the Court first, and then I will speak.

THE COURT: Do we have a microphone?

Thank you so much.

Would you like to speak?

MS. [redacted] Yes.

THE COURT: Stand up, use our microphone.

The only thing I ask is that you speak slowly and as loud as you can, so our court reporter will be able to take down everything that you'd like to say.

I'm sorry, I was just handed up, I believe, what's a copy of the statement that you're going to read to me.

MS. [redacted] Okay, yes.

KW

THE COURT: Thank you. You may proceed.

MS. [redacted] Thank you, Judge.

Dear Judge, what Sanjay did to me has been life changing to me in the worst possible way. I have been impacted by this assault psychologically, emotionally, socially, financially and this case has consumed my life these past two years.

For several months after this happened to me, I had nightmares every single night. I was afraid of sleeping, afraid of being alone, and I felt I had to stay awake at night. I have had nightmares where Sanjay breaks into my apartment and kills me and my dogs. I also had nightmares where I die and get killed in many different ways. Most of the time, I'm the one getting killed and die, but sometimes the victims will be my dogs, friends or family member. My sleeping schedule has been affected. I sleep very little at night because of my nightmares and fears. This has caused me to try to sleep during the daytime and I find myself awake at night.

I have been diagnosed with post-traumatic stress disorder after this assault. I also developed severe anxiety, fear and panic attacks. Things like being in line at a coffee store, in crowded areas, social gatherings with friends or places where there would be strangers, would cause me great anxiety. I found my heart would begin

pounding, it was difficult to breath and I feel like I would faint. This has become a common occurrence for me. Just walking out of my building is difficult. I would picture seeing Sanjay if I left my home. I feared that he would harm me again. I was forced to leave my apartment to walk my dogs, but now I understand why people lock themselves up in their apartments.

My fear was even more heightened when I learned that Sanjay paid $750,000 bail days after the assault. I had constant fears of him killing me. He had threatened to kill me if I reported him to the police. Furthermore, I had fears that a family member or friend of Sanjay would kill me since I went to police and I brought this case forward. Between him paying the extremely high bail and learning that he hired a high-profile attorney, I feared that he would ever hire someone to kill me.

Also, there was an incident where I experienced what I thought I saw Sanjay on the street and automatically I ran out in the middle of the street and I fell in front of a taxicab. This is one of the examples of how I've been living every day in fear. I still do. It was like I was almost waiting for something to happen. I was living in a constant fight or flight mode, preparing myself in case someone would hurt me. It is difficult to relax or to be calm living in that constant state. I still experience this

fear today.

Prior to this assault, I loved being social. I did not suffer from any anxiety or depression or panic attacks. This assault has affected my social life in a big way. I now feel I'm not as social, nor do I want to do the things I used to enjoy. I believe this is due to the depression I have developed since this assault and that I am still struggling with today. However, I am still trying and pushing myself to continue to engage socially, even though I may not want to do this due to fear.

Also, I have developed fears that I've never had before, such as flying, and experiencing great anxiety in social gatherings. My level of trust with others has decreased, especially in men. I developed great suspicion in men. There was a need for me to be fully aware of my surroundings. I almost felt as if I had to leave New York. There were constant triggers being in such populated city, so I was potentially in danger very often. In social gatherings and special life events such as friends' weddings, I felt like a different person. It was difficult to fully enjoy these events, especially when being around others I did not know. Talking to strangers, being in crowded areas such as charity events, I felt I was not as social as I once was.

I also felt my ability to do charity work was

affected. Today, I roughly volunteer maybe only once a month at homeless shelters. However, I used to volunteer on a weekly basis. I find myself staying at home more and isolated from friends and family. This has been due to the level of anxiety and fear for my safety that I have been experiencing. I find that I no longer get the type of joy from volunteering and from being social and going out to dinners as I once did before this assault.

This assault has also affected my ability to work, my business and my finances. Since this assault, I have not been able to return to work. It has been two years since this assault and my ability to function has been severely impacted. The depression resulting from this assault has also contributed to my inability to return to work.

From the age of seven, I have always had a driven and strong work ethic. Not being able to run my own company in these two years has been very difficult and very unlike me. I feel I am not ready to return to work yet. I am still focusing on trying to get better. I also want to try to get back to the happy and positive person I used to be before this happened to me. This includes seeing different therapists weekly, acupuncture, neurofeedback, 2-3 hours of daily meditation, and some charity work, as this has always been my number one priority.

Another factor regarding this case that has

severely impacted my life has been the high level of uncertainty I've experienced. Several times I was informed this case was going to trial, then learned that it wasn't. This made my life feel like such a roller coaster ride. I felt like my life was completely on hold during this process. Planning and timelines for me are very important, and I had certain expectations in mind. It has been frustrating to experience delays and sudden changes in the trial.

Originally, I felt this process would have been a lot shorter. However, it has been two years. I felt I had to focus all my energy in preparing for this trial and that has been emotionally exhausting. I felt like I could not take on any tasks. I found small tasks are becoming increasingly difficult. I would receive letters surrounding this case, like ambulance bills, receiving several medical bills, or simply just opening my mail were types of things that became very stressful and overwhelming to me. So many things that previously were normal and routine became increasingly stressful due to the anxiety I've been experiencing. I found myself putting many things off and this was very unlike me. This has been a long, emotionally exhausting, draining and frustrating process for me. I feel no one should have to go through such a lengthy process because it can be re-traumatizing and can greatly impact a

person's life and level of functioning.

Furthermore, there are so many emotions that crossed my mind as I had to be in the same room as Sanjay again, to be cross-examined and reliving this traumatic experience once again. Of course, I feel no one should have to go through any of this. However, I felt that I had to go through this process, despite how hard this has been, how it's impacted my life in a dramatic way and continues to impact my life. I felt it was my responsibility to report it. I will always continue to do the right thing so people like Sanjay are held accountable and cannot do this again to anyone else. This is why, despite as hard as this process has been, I did it to protect other women from men by Sanjay.

Despite the difficulties I have experienced, I am very grateful that there is a system here in the United States where we can bring cases like this forward to seek justice. I am grateful to you, Judge, and to Detective Jones, to all the police, to the hospital, to the doctors, to the jury and to the district attorney for all their time on this case. I am sure this process has been tough on them, as well, in witnessing what I went through in the photos they saw. I am extremely glad and thankful that the jury saw the truth and that justice will be served.

Justice to me would be that Sanjay would be serving

a lifetime in jail. Since he was found guilty of all five counts that he was charged with. As a believer in God and the Bible, the following statement now holds a significant importance to me: According to the Bible, when a woman is being raped and screams out for help, the man shall be punished by death penalty. I did scream out for help, and we did have witnesses that heard me scream out for help.

From my understanding, the maximum sentencing you can give Sanjay is 25 years. I'm asking you and praying that you will please take my account of the various ways this assault has impacted my life, and please give Sanjay a 25-year sentence. If it was up to me, I would find a life sentence in jail more fair.

To this day, my life continues to be impacted and I struggle psychologically, emotionally and socially due to the assault at the hands of Sanjay. I worry if I won't ever be fully okay. Will I ever get back to the old me. At this point, I don't feel that I will. I wonder how I'm supposed to move past this when this is something I will absolutely never be able to forgive or forget.

This trial might be coming to an end, but I am facing a continuous journey I have to work towards for healing. The sentencing that Sanjay receives will be a significant part in my healing. For these reasons, I sincerely hope you will take my statement into deep

consideration when deciding upon the sentencing here today.

Thank you, Judge.

THE COURT: Thank you very much, Ms. [redacted] I appreciate the statement that you made. I am certainly going to take that into consideration.

Ms. Baraiola.

MS. BARAIOLA: So, your Honor, the defendant was convicted, after trial, of one B violent felony sex offense; three D violent felonies, one of which is a violent sex offense; and one Class A misdemeanor.

The People are asking the Court to sentence the defendant to 18 years in jail on the top count of Criminal Sexual Act in the First Degree, which is a B violent felony, with 15 years of post-release supervision, a Full and Final Order of Protection and SORA registration.

We're asking that this sentence run concurrent with seven years in jail, plus three years post-release supervision on the three D violent felonies in this case: Sexual Abuse in the First Degree, Strangulation in the Second Degree and Assault in the Second Degree.

THE COURT: Tell me one more time the second part of it.

MS. BARAIOLA: Seven years in jail, with three years post-release supervision, on all three D violent felonies, to run concurrent. And one year jail on unlawful

KM

imprisonment, which is a Class A misdemeanor.

This recommendation is based upon the facts of this case and the defendant's testimony at trial.

As the Court is aware, the minimum on the top count is five years in jail and the maximum is 25 years in jail, with a minimum of five years post release supervision and a maximum of 20 years of post-release supervision due to the fact that this is a B violent felony sex crime.

Before the trial, the People were recommending that the defendant be sentenced to 15 years in jail on the top count and that recommendation did not change at any point during the pendency of this case. The People are not seeking the maximum in this case, but we're seeking a very lengthy state prison sentence for this defendant, to be followed by a significant term of post-release supervision for this defendant, because of the heinous nature of the crimes he committed and because of his blatantly false and offensive trial testimony.

The People are asking for a higher sentence now than before trial, not as a punishment for the defendant taking the case to trial, but because of the fact that he chose to take the stand and lie over and over and over again. By convicting him of each and every count that he was charged with, a jury of his peers completely disregarded everything he testified to and also found him not credible.

Further, your Honor, he has refused at every stage of the game to accept any responsibility for his actions. Not only at trial, when he lied to this jury and to this Court, but in the Pre-Sentence Report, which I will read to you. It states: "The defendant denied guilt in the instant offense. He also stated the charges are not correct and that the injuries sustained by the victim he sincerely regrets." That is not taking -- even after a trial, after being convicted, that is not taking responsibility for his actions in this case.

I'm not going to belabor the facts of this case, as you sat through the trial a little over a month ago, but I'm going to summarize them for you, your Honor.

This incident occurred as part of a first date. The defendant met Ms. [redacted] on SeekingArrangement, and on June 15th into June 16, 2016, they went on a date. First they went to dinner, then they went to have some drinks, and finally they went up to the defendant's hotel room at the W Hotel, which is when everything took a turn for the worse.

When Ms. [redacted] told the defendant she wanted to leave and that she did not want to engage in sexual contact with him, he locked her in that hotel room against her will. He told her she was not going, and he pushed her down on the bed, telling her he was going to have sex with her whether or not she wanted it.

First, he choked her while she was laying on the bed. He ripped off her stockings, causing tears in them, which you saw at this trial, and forcibly inserted his fingers into her vagina and her anus without her consent.

At that point, terrified for her life, she said to him she needed to go to the bathroom, and the defendant followed Ms. [redacted] to the bathroom. He stood there, and when he turned his back is when Ms. [redacted] made a run for her life -- only to learn that not only is the hotel room door locked, but the safety latch over the door only allows her to open the door mere inches.

She screamed for help that was heard by a witness staying in the room next door, who testified at trial and told you exactly what she heard about the violent struggle she heard occurring inside this hotel room. And the defendant was immediately upon her when she opened that door, dragging her back to the bed, where he began to violently physically assault her, punching her repeatedly in the face, pulling her up on the bed and continuing to punch her.

He choked her, your Honor, so hard -- you saw those injuries. She had very deep marks on her neck. And he choked her to the point that she was in a stupor and may or may not have lost consciousness.

She testified before this Court, there are moments

after being choked, where she doesn't exactly know what happened. And then she felt like she came to. He choked her to the point, your Honor, that she thought she was going to die in that hotel room. She told you that. She told the jury that he convinced her that he was going to kill her. And then he continued to beat her to the point that blood, it was flying from her face all over the bedding, all over the wall. He beat her, your Honor, into submission. He beat her to the point that she felt it necessary to make up a lie about having a daughter, a child, that doesn't exist in her life, because she wanted the defendant to see her as a human. She wanted the defendant to see her as a person, not just a sex object. He beat her that hard. And that is something that he's refused to do to this day, your Honor. To this day, his testimony, his statement in that Pre-Sentence Report, he thinks he is better than her and he's refused to acknowledge that she is a human being and not just a sex object.

And finally, she gave in. She felt she had no choice but to comply, so she performed oral sex on this defendant until he ejaculated. And what did he do after he got what he wanted? He told her: "Go clean yourself up." You saw the blood in the hotel room, in the bathroom. There is blood everywhere. He told her: "That's not good enough, do it again." And then he threatened her, he said: "I am

bigger than the FBI. I am important. I'm smart. I have money. If you report this, I will kill you." And then he offered her money to pay her off.

Once she left, she went downstairs and immediately reported it. And what did the defendant Sanjay Tripathy do? He tried to clean up the crime scene. He picked up her bra, he picked up her ripped stockings, put them in the garbage can. He picked up a bar of soap, trying to clean up the bedding. Then he took out a bag of chips and began to eat it.

When the cops came to the door, he didn't open the door. He told you, at trial, a preposterous story about what was going through his head at that point. The truth is, he was refusing to open the door for the police.

Your Honor, this was an extremely violent sexual assault where the complaining witness, Ms. [redacted] suffered significant injuries to her neck, her face and her body at the hands of this defendant, Sanjay Tripathy. The Court and the jury saw these photographs, and you could see how long this physical injury lasted.

You saw photographs from the day of, in the hospital. You saw when they were taken by the Photo Unit six days later. Those photographs, those physical injuries, pale in comparison to the emotional scars that this brutal attack had left on Ms. [redacted] and the numerous ways in

which it has affected her life.

I bring this up because the defense is going to ask you, your Honor, when you consider a sentence for this defendant, they're going to ask you for the minimum. And they're going to tell you, just as you read in the letters that were submitted, how this has affected the defendant's life and how it's affected the life of his family and friends. And they're going to tell you he is a good guy; that this is an aberration; nobody can understand how he could commit such a violent crime; that people are going to be sad when he goes to jail.

But the Court needs to also consider the other side of that. The Court needs to consider the toll that this has taken on Ms. [redacted] and on her family and friends. Too often in the criminal justice system, the focus is completely on the defendant. The defendant is a person who is in court date after date before the Judge. The defendant is the person the Judge sees over and over again. You hear from their lawyer, over and over again, how it affects their life. Judges do not see or hear from victims, unless there is a trial, or at the time of sentencing. And there is little or no focus at all during the pendency of a criminal trial, even if it goes to trial, on the fact that the crimes committed by the defendant -- especially crimes like those committed by Mr. Tripathy -- were perpetrated against

another human being -- a person whose life has been inextricably altered as a result.

Your Honor, this crime happened to [redacted] a woman in the prime of her life who, at the time, was running her own skin care business. The defendant violated her. He humiliated and physically assaulted her. He made her body a crime scene.

In addition to being poked and prodded to obtain evidence, she was photographed. She had to explain what had happened over and over again; first to the hospital, then to the police, then to multiple assistant district attorneys, then to a grand jury, and then to a jury at trial. She was asked question after question. Her credibility was called into question by the defense, and she was painted as a prostitute by the defense, leading up to the trial, during the trial, and in the press. She was forced to tell those she cares about most in this case about this awful and humiliating thing that has happened to her.

Most importantly, as she just told you yourself, your Honor, she is still not okay. Two years later, still not okay. She might never be. She might never fully recover. The defendant's selfishness, his arrogance, and his violence, has ruined her life. He has made every day a challenge -- simple things that everyone in this courtroom takes for granted, like taking a walk around your

neighborhood, grabbing a cup of coffee, sleeping -- those things are difficult for Ms. [redacted] because of what the defendant did to her.

Finding a meaningful relationship, trusting another man, is difficult because she trusted the defendant and look what he did to her. He has made her question the true intentions of every person she encounters. She has to live with what the defendant did to her every single day for the rest of her life, and that is significant, and something this Court should consider when you're deciding what to sentence the defendant to.

Finally, your Honor, I want to talk about the defendant's testimony at the trial. The defendant has never taken responsibility for his actions. He has never acknowledged the pain he has caused. What he did instead was testify at trial and lie. What he did instead was deny knowledge of the most basic facts.

I'm not going to go through everything, just a few examples for your Honor: He admitted that he assaulted Ms. [redacted] It's because he had to; there were photographs of her beaten up. But he told this Court and this jury that his intent wasn't to hurt her, which is insane and not true. He denied seeing blood all over the white bedding and the walls in this hotel room. He blamed it on the lighting in the hotel room. He denied the fact that he punched her, he

insisted it was only slaps. He denied how she sustained those injuries to the inside of her thighs. That was probably one of the most offensive portions of his testimony. When he stated that she got those injuries when his hands were inside of her thighs and she orgasmed so hard that it squeezed together and that's how she got those injuries. He lied about the ice bucket. He lied about the safe. He lied about how her tights were torn.

The list went on and on, your Honor. He did not have to testify at this trial. Testifying was a deliberate choice he made. He took that witness stand and he took an oath to tell the truth, and then he deliberately lied to you and to this jury about every single detail that he could lie about. He lied about every single detail that was not video or contained in a business record. He made a mockery of this justice system by getting up there and telling a preposterous, offensive and farcible story. Were the subject matter not so serious, it would be almost comical in its complete lack of common sense.

The defendant deserves to be punished not only for the crimes he committed, which are horrendous in their own right, but also for his conduct at trial. He made deliberate choices on June 15th into June 16, 2023, which a jury of his peers held him accountable for by finding him guilty. And now is the time for the Court to sentence him

accordingly. He ruined the life of a woman because he is selfish, lying, entitled and a sexual predator. Sanjay Tripathy should know that this Court takes the crimes he's been convicted of very seriously and that this Court does not tolerate perjury.

This case is not about who the defendant pretends to be when he is around his family and with his friends and his colleagues. This defendant was leading a double life, which he told this Court about -- he admitted to it while testifying. He is an experienced liar, and his conduct, the conduct that he was convicted of at this trial, shows you exactly the type of person that he is. He is so used to lying, so used to living this double life and pretending to be whoever he thinks he needs to be to suit the audience that he is in front of at the present time.

His trial testimony on direct was almost effortless. It was rehearsed, and it was exactly the type of story that a man of his situation would tell. It is also the exact type of story that a man like him, with an ego like him, would expect others to believe and credit. He underestimated Ms. [redacted] and the fact that she would come forward. He underestimated law enforcement; didn't believe that anyone would actually credit what she told them. He underestimated the common sense of this courtroom, and the jury of his own peers. He thought that they would believe

KM

his lies because he is a rich man with money. And I can only hope, your Honor, that he has also underestimated this Court, and that you see him for who he is, and what he is, which is a violent sexual predator.

The minimum which the defense is going to ask you for is simply inappropriate in a case like this. The People are asking for 18 years on the top count of Criminal Sex Act in the First Degree because that is an appropriate sentence for the criminal conduct of this magnitude. Anything less would be unjust.

Thank you.

THE COURT: Thank you very much.

Mr. Rothman, would you like to be heard?

MR. ROTHMAN: I sure would, Judge.

I'm probably going to take a lot of heat for what I'm about to say, but I really don't care. And I say that because not only in my opinion do I believe that Ms. [redacted] completely fooled this jury, but it sounds like she's completely fooled the prosecution in this case.

She comes into this courtroom and has the DA stand up on her behalf, and stands up on her own, and says: My life is ruined. I'm a shell of myself. I can't go out of the house. I can't be social. I can't do anything. I have all these phobias. All one needs to do is do what I did about an hour ago and go on her social media website on

Instagram, where she's got pictures of herself toasting her two big wins this year -- referring to this case and I'm sure the Florida case. She's wearing a hat -- withdrawn. She's got a coffee cup in her hand that she's drinking out of that says: "I drink the tears of my enemies." She's partying on the beach in St. Barts, drinking. This is not a shell of her former self.

She talks to this Court, and talks to the prosecution, about how she can't go to work, that she hasn't worked in two years because of this case. Let's remember, she's a woman who, by her own admission -- and she only admitted what she had to admit because we had it in black and white -- that she dates for money. Plain and simple.

There were things that didn't come into evidence in this case because of your Honor's rulings that I was given by the prosecution, where she talks about dating for money. "It doesn't mean sex, it means I'm compensated for my time." That's what she does for a living.

Her skin care line is dead. Has been dead. She doesn't make money from that. It's all about dating. That's what this is.

She lied to this jury from the beginning, Judge. I know we're supposed to say, as lawyers, we accept the jury's decision, we accept their verdict. I don't. I can't. I have no choice but to stand here and make arguments for

kk

Sanjay Tripathy at sentencing, but I think this jury got it wrong. One hundred percent. I don't know if it's because of the photos that came into evidence that showed physical injury. Yes, she was injured. Yes, from day one, he offered to plead guilty to injuring her, but not to forcibly sexually abusing her.

This line about how he didn't accept responsibility is far from the truth. And to this day, and probably to the day he dies, he will say: Yes, I physically assaulted that woman, but I did not sexually abuse her against her will. This was a BDSM date that they went on, that went terribly wrong because she, Ms. [redacted] wanted more money for the injuries that she had on her face, and when he wouldn't pay up, she tried to extort it.

The jury rejected that. I don't know if it's because of the political climate, because of the stuff that's in the newspapers every day, that was just overwhelming in their faces -- the photos that they looked at time and time again of horrendous injuries. But, misdemeanor injuries. And I'm not minimizing those injuries. But their own doctor said, other than bruising to the neck, there was no injury to the throat. They're misdemeanor injuries.

And, yes, Ms. Saraiola said he won't admit his fists caused those injuries. Their own doctor, their own

doctor said those injuries can be caused by slaps. And that's what Sanjay Tripathy said happened. He slapped her repeatedly.

The matter is, Ms. [redacted] lied from the beginning about this case, about what the nature of this relationship was. She tried to tell this jury -- and successfully told them, I suppose -- that this was the beginning of what she believed to be a wonderful relationship, this date; where she was going to have a long-term one-on-one relationship. Yet, she chose to start that relationship with a fake picture of herself on her dating site, and asking for money in exchange for the date. That hardly rings true. That's not how you go about forming a relationship. That forms a relationship involving money for time, for sex.

That's what this case was about. And nobody, not Ms. [redacted], not the prosecution, nobody wants to acknowledge it. But it's out there, and it stunk up this courtroom. But nobody would admit it.

There are letters on top of letters on top of letters that I received from the defendant's family and friends, and many of them are here. Dozens of people came from thousands of miles away -- from the West Coast, from wherever, to support him. They wrote letters, Judge, and those letters, not one of them blames the victim for anything. In fact, quite the contrary, many of those

letters suggest that they felt sorry for the victim, who suffered a horrendous night at his hands, who suffered injury at his hands. Some of them called his actions despicable. They don't blame the victim. They place blame on Sanjay Tripathy for what happened that night.

But there are limits. None of them were there, none of them know what really happened. But they don't blame the victim. They don't blame her. In fact, they acknowledge that she is the victim here. And yes, they talk about a loss that they will suffer while he is incarcerated. Everyone of those letters, Judge, the overwhelming theme was what a tremendous family man he is, that he takes care of his own two children, that he preaches education to the community, that he is charitable.

Yes, you can say that he's leading a double life -- and I'm sure it's very hard for his wife to hear this and to sit here and know what her husband did, that he was unfaithful. One hundred percent. She knows it. She's heard about it. Yet, she writes a letter on his behalf as well. This is a man who's overwhelming concern is his community and the education of his children and children of the next generation -- and that's in black and white from his brother-in-law, neighbors.

I'm not going to go through all the letters. The Odisha Society of America, the president of that nonprofit

organization, wrote a letter on his behalf, talking about what a community-minded individual he is; he contributes money, teaches the youth, gives his time when he is not at work.

DT Argawal (ph.) for example, a neighbor who's known him for ten years, finds his actions appalling and disturbing, yet finds them to be out of character, and talks about he, Sanjay, is concerned about the next generation and how kids can achieve their maximum potential.

That's an underlying theme in all of these letters that I read. And he says something that's significant: that one night should not define a man.

And that is true, Judge. Yes, he leads a double life. Yes, he was unfaithful to his wife. Yes, he's got this other side of him, but that other side of him is not what the People want you to believe about him. The other side of him is someone who, as Sanjay Batia (ph.), his brother-in-law wrote -- who's known him for 15 years -- he's interested, Sanjay, in addressing the underlying issues that got him here. That's what he takes away from his relationship with Sanjay post verdict. His brother-in-law, for 15 years -- that he confessed a lack of judgment, remorse, desire to address the underlying issue, a community contributor, volunteer, supports charities. On and on and on.

His own wife, Judge. Again, she is a victim here. All his doing. All the defendant's doing. Yet, she says he's been a mentor and a guide to the children, focuses on education, charities, religious organizations. Excellent father, son, brother and friend. She, too, the defendant's own wife, said she is sympathetic to the victim, says that Sanjay is remorseful about what he did. However, notwithstanding everything, she knows about this case and she knows it all -- she said she waits for him with open arms, as does the community, to try to rebuild their relationship and their life together.

He's almost 50 years old. Never, ever arrested before. Never in trouble with the law. This jury heard that, Judge. This jury did not hear another crucial piece of evidence that I think, had they heard it, might have resulted in a different verdict -- and that is the allegation that Ms. [redacted] made about another individual, eight months later, in another jurisdiction.

MS. BARAIOLA: Objection, your Honor.

THE COURT: No. There's no objection to a sentencing argument.

MS. BARAIOLA: That has no place in this argument.

THE COURT: Go ahead.

MR. ROTHMAN: Two men without criminal histories, two solid citizens convicted of sex offenses by the

testimony of [redacted]. Neither jury is aware of the other allegations in another courtroom, in another jurisdiction. Those were the rulings that we had during the trial.

Again, I'm trying to figure out why I think this jury got it wrong. And I say, again, I do think they got it wrong. I think that's a factor. I think it's a factor.

You know, Sanjay, in the year that I've been representing him, has been nothing but a gentleman, courteous, responsible, remorseful about what he did. But, again, falling short of -- and not saying that he did anything more than assault, which was consistent with his trial testimony -- that 90 percent of the evening was consensual; the last ten percent was an assault. And that's what he was prepared to admit to, and that's what he is prepared to admit to today. And that's what he told in the Probation Report, that's what he's guilty of -- assault, not a sex offense.

The Legislature gives you broad discretion, Judge: Five to 25 years for a 50-year old man, who has apparently done just about everything right in his life -- school, family, education, community charitable work -- on and on. He's going to be punished. He's going to go to state prison with a sex offense felony. You have the power to give him five years. That's not a sentence that is against the law.

that's what the Legislature considers an appropriate number as a possibility. There is no reason in the world, in my humble opinion, to give him anything more than that, Judge. He's done everything right for 50 years. He did this wrong. He is convicted now of a sex offense. I think five years is the appropriate sentence for him, given everything we know about him, and that's what I'm asking you to sentence him to.

THE COURT: Thank you very much.

Mr. Tripathy, would you like to be heard, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. Rothman, would you mind making sure the microphone is near him so we can make sure we hear him. I ask that you keep your voice raised and speak slowly to make sure our court reporter gets it down.

THE DEFENDANT: Dear Erica Edwards, I would like to thank you for giving me this opportunity to read out my statement.

First of all, I would like to deeply apologize and sincerely regret my actions that have caused injuries to Ms. [redacted] I wish I could turn back the clock, but unfortunately I can't. Not a day has passed since June 16, 2016, when I have not thought about this incident, expressed deep remorse, and prayed to God and asked God and Ms. [redacted] for forgiveness.

No one deserves this. I will carry this to my grave. I know what I did, but I did not commit sex offenses that I've been charged with.

I am not a bad person and do not want to be judged by this single incident, but for all the deeds of my life. I have tried to be a good father, a good community man and a good family man. Respectfully, I disagree with the verdict, but respect the process of our criminal justice system and the power vested in it.

I am a changed man who's tried, and will continue, working towards making the world a better place by serving the community, especially in education.

I would especially like to thank the Judge Erica Edwards, the police for their professional conduct after I was arrested, and especially the court staff, who have been extremely courteous and given me the dignity and respect I deserve as a human being. My attorneys on this case, my wife, my family, my kids, my brother, my parents -- for your pain and suffering.

THE COURT: Take your time, Mr. Tripathy.

THE DEFENDANT: I would also like to thank --

THE COURT: Hold on just a moment. Just give us a moment.

(Whereupon, there was a pause in the proceedings)

THE DEFENDANT: I would also like to thank my

friends, neighbors and people of our community -- some of whom have come here in person from far away, and many who have written letters for me and showed faith in me.

And lastly, I would like to thank God for showing me light during this very dark days.

In my closing, I would again like to sincerely apologize to Ms. [redacted] to whom I've caused a lot of pain and suffering. And I ask for forgiveness, mercy and compassion, and leave everything to the best judgment of Judge Erica Edwards, and God almighty.

Thank you.

THE COURT: Thank you very much.

And you had nothing else, right, Mr. Rothman?

He's nodding, saying no.

So, I have considered everything. First and foremost, I do want to say that I appreciate Ms. [redacted] being here, and I certainly appreciate the statement. And I have considered all of the evidence in the case -- even before today -- and I do appreciate you giving me the written version of your statement. And I heard it, and, you know, I was looking at you as you delivered it to us.

I also appreciate the People who are in the audience, particularly Mr. Tripathy's family and his friends. And I did read the letters -- I believe there were about 10 letters or so that I read, and I reviewed and

considered that.

I also did consider the Probation Report. Again, I do apologize for the delay in receiving it. So I did consider all of that.

The bottom line is the jury has spoken, and these are very serious charges, as I'm sure everybody can appreciate and acknowledge.

Mr. Tripathy, I was moved by many of the things that your friends and family members have said about you and the work that you've done in the community. I am also moved about how this has affected Ms. [redacted] life, and how things have changed. And, you know, I sat here throughout the trial, and I listened to all the testimony of all of the witnesses, looked at the photographs, everything like the information that came out about the medical records, everything that has been presented.

So, yes, I am given a broad range of authority in terms of what the sentence shall be, and all I can do as a judge is do my best to make sure it is appropriate and it is fair to both sides and that justice is in fact served.

I certainly do honor the verdict of this jury in this case. They have spoken based on the evidence. You had an opportunity to testify.

I have to tell you -- the attorneys on both sides were tremendous. You know, absolutely tremendous. They

KC

were consummate professionals and prepared every day timely. And, you know, as the Judge in this case, I believe that you are adequately represented -- even more than adequately, I should say, by the job your attorney did. And the People were absolutely professional and tremendous.

So, everybody is to be acknowledged for the work that was done in this matter. But the bottom line is, you were convicted of each and every count in this case.

Before I do impose the sentence, I do want to make sure that you understand, sir, that you are a violent sex offender at this point, now that you are convicted. You will have to register as a sex offender for several years, and that will be a part of my sentence. You do have the right to be present during your hearing that we would have at the end of your time -- towards the end of that time. However, if you are not present in court for any other proceeding in this matter, including that hearing, then we are going to go forward without you. You do have a right to be present. You can certainly speak to Ms. Rothman about that, but whether you do decide to come or not, if it's a voluntary basis, we will proceed without you, and you will be designated at an appropriate level, with or without your participation and assistance in this matter. So, I do want to say that as well.

So, the sentence I'm imposing on Count 1, Criminal

Sex Act in the First Degree, that's pursuant to Penal Law Section 130.50 subsection 1, is seven years imprisonment plus seven years of post-release supervision.

You will have to register as a sex offender.

That will be running concurrent with each and every sentence that I am also imposing.

The sentence of the Court as to Count 2, Sexual Abuse in the First Degree, pursuant to Penal Law Section 130.65 subsection 1, is three years of imprisonment plus three years of post-release supervision, to run concurrent with the sentence on each and every count. Also, that would include the SORA registration.

Then, the sentence of the Court as to Count 3, Strangulation in the Second Degree, pursuant to Penal Law Section 121.12 is three years of imprisonment with three years of post-release supervision to run concurrently with the other sentences.

The sentence of the Court as to Count 4 for Assault in the Second Degree, pursuant to Penal Law Section 120.05 subsection 6, is four years of imprisonment plus three years of post-release supervision.

And the sentence of the Court as to the A misdemeanor of Unlawful Imprisonment in the Second Degree, which is the fifth count, pursuant to Penal Law Section 135.05 is time served

KH

I sure wish, Mr. Tripathy, that you had considered your family, your wife in particular, your daughters, and all the work that you have done in the community, the children that you have helped -- I sure wish you had considered that before this night, and I'm sure you would take it back if you could, as would everybody, I think, that's involved in this case. But I do want to say that even though you are unable to continue to mentor them from the outside, I'm certainly sure that you can be a positive factor in their lives in whatever path you choose to do so while you are incarcerated.

Your sentence includes SORA registration; you will have to register as a sex offender. It includes the mandatory surcharges, the enhanced fees, including the SORA registration fees and the enhanced fees related to that. It will also include your DNA fee, and the Full and Final Order of Protection.

Now, the Order of Protection requires you to stay away from Ms. [redacted] and you can't contact her in any way. So, that's no phone calls, letters. You can't have anybody else try to contact her on your behalf. You have to stay away from her home, school, place of business. You can have absolutely no contact whatsoever. You will get a copy of that. The officers will direct you once the paperwork is prepared.

I believe that includes everything.

So, we have a Full and Final Order of Protection, mandatory surcharges, the enhanced fees, DNA collection, as well as the time that I've just rendered.

Anybody have anything else they'd like to say for the record?

MR. ROTHMAN: No.

THE COURT: Thank you so much, everybody.

It is hereby certified that the foregoing is a true and accurate transcript of the proceedings.

Kathleen Monteiro
KATHLEEN MONTEIRO
SENIOR COURT REPORTER