# Post-conviction proceedings transcript (Mar. 12, 2019)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM: PART 51

- - - - - - - - - - - - - - - - - - - - - -

THE PEOPLE OF THE STATE OF NEW YORK,

Indictment No.

-against- 2720-2016

SANJAY TRIPATHY,

Defendant.

- - - - - - - - - - - - - - - - - - - - - -

100 Centre Street
New York, New York 10013
March 12, 2019

B E F O R E:

THE HONORABLE ERIKA EDWARDS,

J U S T I C E

A P P E A R A N C E S:

CYRUS R. VANCE, JR.,
DISTRICT ATTORNEY - NEW YORK COUNTY
Attorneys for the People
One Hogan Place
New York, New York 10013
BY: KRISTEN BARAIOLA, ESQ.
Assistant District Attorney

LAW OFFICE OF ARNOLD LEVINE, ESQ.
Attorneys for the Defendant
233 Broadway #901
New York, New York 10279
BY: ARNOLD LEVINE, ESQ.

Lisa S. Nelly, CCR
Senior Court Reporter

COURT CLERK: Calendar number one, Sanjay Tripathy. Indictment number 2720 of 2016.

THE COURT: Appearances, please.

MS. BARAIOLA: Kristen Baraiola for the People.

MR. LEVINE: Arnold Levine, 233 Broadway, Suite 901, New York, New York for Mr. Tripathy.

THE COURT: So, Mr. Levine, today what is it that you would like us to do?

MR. LEVINE: Judge, just to put some background on it.

THE COURT: Sure.

MR. LEVINE: I was retained to represent Mr. Tripathy on his direct appeal with the Appellate Division. Several weeks ago, I don't remember the date, I went to the Clerk's Office to look at his file. In the file was a few things:

There was some things that were actually sealed, such as and ex parte motion that had been submitted to Judge McGrath. That was in a sealed envelope, so I didn't open it and look at it.

There was something else that was in a red envelope and sealed, so I didn't look at that either.

Then there was something else that was just bound with a clip and had one red page on top of it saying "no public record." Since that is all it said, and since the

clerk actually gave it to me, I looked at that. That was messages that the complainant had had with not only the defendant but with numerous other men. I think it was basically between June 11th and June 15, 2016; and this incident happened on June 15, 2016.

THE COURT: When was the dates again?

MR. LEVINE: The messages that I saw, I think, went back to June 11th.

THE COURT: Okay.

MR. LEVINE: So it was all within four days.

What I remember seeing was within four days to this happening. And leading up to the hours before, she was still exchanging messages with other men.

So I looked at that and I know from reading the court transcript that motions in limine — that the People submitted an ex parte motion to Judge Obus. Judge Obus said that they didn't have to disclose it to the Defense, it was Brady material. That, ultimately, it was up to the trial judge whether it is to be disclosed later.

I know from reading the transcript — you read at least some part of it at some point because in the middle of the trial, during cross-examination -- you became aware that it was an issue based on what was in the messages. That, based on the complainant's testimony at trial, you thought that her recollection needed refreshing by the

prosecution ex parte. So I know it became clear that you actually saw these things as well.

THE COURT: By the way, wasn't this litigated before trial, as well, in front of me about the disclosure, and I decided to not disclose it and denied the motions to do that.

MR. LEVINE: You did. It doesn't look like it was much brought out. Frank Rothman, the trial counsel, did not have any access to these, so he could not make any offer of proof of what was in there. He couldn't say what was in there, why it was relevant to the Defense, why it should be disclosed, why it should be used in cross-examination; he didn't know what he didn't know.

THE COURT: He made some extensive arguments about it and I decided not to disclose it. He renewed the arguments at various times, from what I recall, and I decided not to disclose it.

I recall what you're saying. Go ahead.

MR. LEVINE: There were two different things that appear which were subjects of the motions in limine: one was these messages, but the other was that the [redacted] had accused a man of rape in Florida eight months later.

That one had a little more decision. That one Frank actually knew the facts of that case and had watched some of that trial.

THE COURT: I recall.

MR. LEVINE: That issue got more of a discussion. Frank had made an offer of proof on that one, but he couldn't say anything about these messages because he didn't know what was in there.

THE COURT: Okay. Make your record.

MR. LEVINE: Having looked at those and having read the trial transcript, it became clear to me -- at least in my opinion -- that those records should have been disclosed. So that, number one, he can make the argument.

And the Rape Shield Law is not a discovery law. It is an evidentiary ruling for trial purposes. It is not a part of the discovery code in the sections of the CPL. It is part of the evidentiary portion of the CPL. There is nothing in the Rape Shield Law that says these things can't be disclosed to Defense counsel so he can make an argument, an offer of proof, about whether these things should be submitted despite 60.42.

THE COURT: The point right now is you want me to disclose it to you so you can prepare your appeal that is due in the next few days?

MR. LEVINE: Correct. I didn't look at maybe all of it. I took pictures. I didn't have change on me or money to photocopy, but I stood there with my phone and took pictures of what were not public record but still were

available to me, retained counsel.

Based on what I saw, there are numerous things that I want to raise on appeal and be able to reference to show that there was errors in the appeal by not disclosing it and not allowing the Defense to use it in cross-examination. To tell you the truth, my brief is mostly written and that Section is mostly written, but when I went yesterday to look at the file again, they took it out of the file and told me I wasn't allowed to see it.

And I said, "It only says 'no public record,' it is not in a sealed envelope." They took it to the back, they spoke to somebody, and they said there was actually a protective order and they couldn't give it to me, and I had to go back to Judge Obus who issued the protective order.

I'm here now because if that's the case, then it seems I can't reference them. I have to take out this portion of my brief. It is a very, very important part of the brief and I think there are very, very strong arguments in there.

I've done a lot of research, both in New York and the rest of the country on Rape Shield statutes and the case law applying them. Not only in New York but the whole country. In effect, they all have the Rape Shield Statute.

I think there are very strong arguments for the fact that not only should it have been disclosed, that it

would have been admissible. And if not admissible, I think it would have been admissible right from the beginning, to support the Defense's case. But even if not, it certainly would have been admissible to cross-examine her because she opened the door; the plaintiff did several times.

And she is very misleading, in fact, in the picture of herself and her life; her life as a prostitute/escort. And those things should have been addressed. They went uncorrected by the People. And, in fact, the only people that wanted to correct anything was done by you sua sponte.

People were content to sit there quietly when she said, *I was willing to try it basically this one time with Sanjay Tripathy, asking him for money. Where it was like some coffee shop challenge where you ask for it but if you don't get it, that's fine, you go anyway. There is nothing to lose. And I don't know whether I ever asked anybody else. I was just willing to give it a try, give it a try this time.*

These messages are replete with -- she asked not just some people or another guy, every single person with whom she communicated with in those four days she asked for money. She started out asking for $10,000 per month, and then certain people on a weekly basis, and other people on a per meet basis. Numerous times when people were unable

to meet her requirements, her fee requirements, she simply said she won't be able to see them. She won't go out with them unless they can meet those requirements. So this was not a, I decided to give it a try. And it was not like this coffee shop thing like, oh, I'll give it a try but if they say no, I'll go anyway.

The People also put on evidence that made it sound like she was well-to-do, a successful business woman who had these real estate investments all over the country, and why would she be selling herself for sex. When it is clear, that's exactly what she was doing.

THE COURT: But in terms of the — so we're talking about disclosures.

MR. LEVINE: I want to be able to reference these things on the appeal because I don't want to just leave it to an in camera inspection with a request with a vague, please look at these and decide on your own whether this is relevant somehow. I'm afraid the Appellate Division will have this knee-jerk reaction of Rape Shield law. This stuff is not allowed in. It shouldn't have been disclosed. It wouldn't have been admissible. I want them to know from an advocate's perspective, why this stuff should have been allowed in and how it would have been used. They can rule against me eventually.

THE COURT: Mr. Levine, if you were to appeal the

ruling with the protective order initially that was granted by Judge Chos, and if you were to appeal my ruling not to disclose and continue that as many times as it was raised, why would I need to disclose it to you right now?

Just for the record, Mr. Levine, it was in the file yesterday you said when you first looked?

MR. LEVINE: Yes. They took it out of the file from me. And I said, "Why are you taking that file?"

THE COURT: For the record, it is not in the file today. I'm going to look one more time just to make sure they did not remove that red sheet.

We've made inquiries to the Clerk's Office and they have looked for it and do not see this sealed envelope. We'll find it, because I know they didn't just destroy it and throw it away.

This should be made a part of the record to the Appellate Division, either way, in some capacity. So you can challenge whatever you need to challenge. It should be a part of the record for the Appellate Division to review.

I would like to see it, to see what is in there. I have a pretty good memory but not all. Details are coming back as you're telling me certain things.

MR. LEVINE: Somebody, I don't know who it was, you or Judge Chos, somebody else, they had actually underlined a lot of things in there. Like, every time she

described herself as super sexy, and naughty, and willing to do anything and everything to please my man.

THE COURT: No, I didn't write that.

MR. LEVINE: And there were actually paper clips on some of the pages, on many of the pages, and also at certain places like that. Obviously, I didn't put them on there and I didn't mark up the pages.

THE COURT: Let me hear from Ms. Baraiola.

MS. BARAIOLA: Your Honor, just the background of this is that these messages -- being whatever the People received in a response for a subpoena, I don't have it in front of me now so I don't know the dates -- was provided to Judge Obus in camera for an in camera review. And, again, I don't have anything in front of me, but I believe my -- I know my recollection, I just can't say it was 100 percent accurate. Judge Obus had agreed with the People after reviewing the content of all these messages and the People's ex parte explanation about why we did not think it should be turned over. That it is not discoverable because it is not something the People intend to use in their case in chief.

It is not Brady material. It didn't exculpate the defendant from the allegations against him in any way, shape, or form. And that he was not going to be making a ruling, I believe, about whether or not it needed to be --

whether or not it can become relevant at the time of trial. So he was not going to make a decision on the issue of Rape Shield or Cillis, those types of things. He was going to leave that up to your Honor.

And then my recollection -- again I don't have dates, I don't know for sure but I believe -- I submitted the same exact packet. It had been returned to me. I submitted the same exact thing to your court clerk, I believe, ahead of the trial so you would know this is going to be an issue.

And my recollection is again, that you did review everything and we did have a discussion about it. And, again, the Court agreed with the People that it was not discoverable. It was not Rosario. And you also made the decision that it should not be turned over because it does not fall within any of the enumerated sections within CPL 60.42, the Rape Shield Law statute.

I believe that both you and Judge Obus who read everything and have the full context of the case and was reviewing it, that you made the correct decision.

I think that if Mr. Levine would like the Appellate Division to review this, I think there is a different and a more correct channel to go through, rather than asking your Honor to undo something that you had already made a decision about months ago at this time.

I do think the decision was correct and I understand what Mr. Levine is saying. He wants to be able to direct them to certain things but I think it was a mistake that that was left in the file the way that it was.

I don't have all the minutes before me. Obviously both you and I haven't looked at transcripts or anything recently, so Mr. Levine is much more well-versed in exactly what was said on the record and what the arguments were than I am certainly at this moment. But I do not think that this is the way to go about it.

I think that if the issue is whether or not the Appellate Court should review it, then they should make that review in camera. I don't believe that they should be released to Mr. Levine.

I would ask the Court, he did take photographs of something, and I would ask the Court to direct him to not distribute those photographs. Those photographs should be deleted.

THE COURT: Here is what I'm going to do. I need the clerk to continue to look for these documents. These documents should be made a part of the appellate record in a sealed capacity so that the Appellate Division can review them.

I do believe that, Mr. Levine, you have several options to try to appeal the Courts' rulings, my ruling as

well as Judge Obus's in the first place.

I am not directing Mr. Levine to delete the photographs. I am directing him not to disclose it outside the appellate legal process. If you want to include something in your brief, I'm not going to prevent you from doing that, but I'm not going to grant disclosure of those documents, as I feel that they should not have been disclosed in the first place. I understand that your viewpoint was, it was not disclosed for public viewing, it was not sealed which would prevent you from seeing it. I don't believe that should have been the case.

MR. LEVINE: The problem is, Judge, if I reference them, if I make reference to it, the prosecution on appeal is going to move to strike that part of my brief.

THE COURT: Even though I'm making it a part of the appellate record?

MR. LEVINE: Yes. I believe they're going to move to strike me making references to things that are not public record.

THE COURT: The public record or the appellate record?

MR. LEVINE: They're a part of the appellate record, but you're saying they should be sealed. You're not giving me access to it.

I think they're saying, that any specific

references that I make in my brief to the contents of them should be stricken from the brief. Obviously, I don't want that to happen.

And I just want to point out, the purpose of the Rape Shield Law doesn't really apply at this point. The purpose of the Rape Shield Law is to prevent a harassing cross-examination about her being dragged through the mud in front of the jury about her past and things like that.

THE COURT: It is hard for me to grant disclosure on something I don't see right now. I need the documents.

MR. LEVINE: I can go down to the Clerk's office and try to speak to the clerk that I was speaking to yesterday if she is there. They have it.

THE COURT: I need to see it because there may be portions of it that -- I understand what your point is.

When we had the conversation off the record, I would like to disclose portions of it; I can't say the whole thing. I haven't seen it for your appellate arguments. And I do think it is totally different at this point than during the trial, pretrial, in the middle of cross examination, where the minutes you just showed me I sustained an objection to basically the same question three times. Trial counsel continued to ask a question that I felt was inappropriate — you may disagree -- so disclosure at that moment is a lot different than closure right now. I

get that.

MS. BARAIOLA: I am asking that the review of this be made by the Appellate Division, not provided to Mr. Levine at this time.

THE COURT: For the record, I also spoke to Judge Obus about this. I need to see it and then I'll make a determination.

MR. LEVINE: 60.42 has enumerated but there is also a subdivision of that, Subdivision 5, that basically says it is your discretion and subject to the limits of the constitution which here involve Brady, and due process, the right to present a defense, and the right to confront and cross-examine witnesses, and the right to a fair trial. Those trump the Rape Shield Law. There is no question about that.

THE COURT: I can say for the record, I was well aware of my discretionary authority at that time, and in my discretion I chose not to disclose it on multiple occasions.

MR. LEVINE: Right. Right. Obviously I want to challenge that. It is no offense to your Honor.

MS. BARAIOLA: I would say one additional thing, your Honor.

I do think that Mr. Rothman if at this trial made those arguments to the jury anyway, and clearly a jury

chose to discredit the arguments.

MR. LEVINE: He had nothing backing them up.

THE COURT: That's what the appellate court is for. If they think there is wrong, they will make the appropriate ruling on it and we will all live with it and justice will be served.

Off the record.

(Whereupon, a discussion is held Off the record. Recess taken.)

* * * * * * * * * * * * * * * * * * * * *

AFTERNOON SESSION

* * * * * * * * * * * * * * * * * * * * *

COURT CLERK: Recalling calendar number one. Sanjay Tripathy, Indictment number 2720-2016.

THE COURT: Appearances, please.

MS. BARAIOLA: Kristen Baraiola for the People.

MR. LEVINE: Arnold Levine for Mr. Tripathy.

THE COURT: Mr. Levine, I understand the Clerk's Office was still unable to locate it after you went to talk to them; correct?

MR. LEVINE: Yes. I was down there right after leaving you. I was down there until they kicked me out for lunch. I know your clerk came down too and was looking for the file. They said they looked everywhere and they couldn't figure out where it went.

THE COURT: I made some independent inquiries myself. They don't know where it is and they are still looking; and supervisors are involved and I'm assuming it will turn up at some point.

MR. LEVINE: Well, because they can't find it, I texted the prosecutor to see whether she had other copies of this stuff. I don't know whether they do, so I made copies of the things that I had taken pictures of so you can see at least. And since I don't know whether we're ever going to get it -- find it -- if you want to look at the copies of what I took pictures of, they are here.

THE COURT: Okay.

MR. LEVINE: I have copies for you and the People.

MS. HARACOLA: I spoke to, again, to another person in appeals and was again informed that the normal way that this is dealt with is, a motion is filed to the Appellate Division -- because that is who this case is pending before at the moment when it is up on appeal -- and that the decision would be made that way.

I did explain what Mr. Levine was asking me to do, to recreate; and their advice was, it is way too early on to prematurely make a decision like that. They said that we should look for it. And they suggested that maybe I go down there and talk to them. I know you already did,

your Honor.

THE COURT: To the Clerk's Office?

MS. BARATOLA: To see if I can help facilitate finding it.

THE COURT: You can tell them I did.

MS. BARATOLA: But basically, before we get to the point of recreating something. Everyone in this courtroom I think has reason to believe that it is somewhere down there. If it was present yesterday then it is -- it just got misplaced and I think it can be found.

THE COURT: It can be.

Mr. Levine, I'm going to put this on the record. Feel free to order the minutes, whatever you need to do.

I would like for you to make the motion to the Appellate Division at this point. It was always my intention to make the records that were sealed to be a part of the appellate record for your appeal purposes.

I do understand the difference between disclosure and introduction at trial. I'm going to leave it up to the Appellate Division. I personally do not have a problem disclosing it to you, disclosing the portions of it that you've already seen. Let me say that. Let me be clear about that. I don't have a problem with disclosing what you have already seen. It appears that it was provided to you possibly in error. I'm not going to say one way or

another.

Honestly, I don't recall the details of the protective order, but I'm asking you to make the motion to the Appellate Division at this time and do with it as you see fit. It was my intention to make that a part of it.

It will turn up, I believe. It is old, but after speaking to several people in that office they are looking. They're looking, and I believe it will turn up. It is possible it was misfiled or left behind. It is not like it was discarded or destroyed.

I'm no asking the People to do anything, to recreate anything. If by chance there is an issue once you make the motion to the Appellate Division they may come down and ask the People to recreate it.

MR. LEVINE: One of the things is, it was already in the file. So I was going to issue the subpoena to the Clerk's Office to send the entire file -- the original record -- up to the Appellate Division. That would have been in it. Now if they send that file up there, it won't be in it. So it would be a different motion for the People to provide it as opposed to it already being in a file for them to see.

I want to know whether the People actually have other copies of it, in case the clerks downstairs for some reason can't find it. I don't know how many files they're

going to go through down there before giving up, but it is clearly down there somewhere.

MS. BARAIOLA: Your Honor, as far as making a decision about what can be disclosed to him, I would ask that if your Honor is considering that, that it also be put in writing, and myself and the appellate lawyers in my office have an opportunity to respond to whether or not something that was definitively decided by two judges at different phases of this case should not be turned over to Defense counsel; and now you're considering doing that

I would like to have an opportunity for my office to respond in writing about any portion of anything. I know that he came into contact with something -- it seems inadvertently -- in the court file that was not supposed to be in there in the first place.

If that is what you're considering doing --

THE COURT: Yes.

MS. BARAIOLA: -- that we have an opportunity to respond. This is a very serious and big decision.

THE COURT: I just want to be clear. I ruled on not disclosing it to trial counsel at that time and it was not my intention that they would be precluded forever on appeal to raise the issue as to whether or not that should have been disclosed in the first place.

MS. BARAIOLA: I don't think that he is precluded

from making that argument on appeal. He has the record. The appeal is based on what is in the record at trial. He has the motion in limine that was already argued and decided before you. So that is in the record as things that were not turned over. He has the trial transcript of the cross of the complaining witness, where this issue came up and how this issue was dealt with.

He's not precluded in any way, shape, or form from making an argument that your decision and Judge Obus's decision should be revisited. To me those are very separate things, whether or not he can make the argument that that should be revisited or whether or not something that was not part of the public record of this court file -- that he accidentally came in contact with it -- should be given to him because he knows about it. Those are two very different things.

My understanding, if something is sealed and not a part of the public record -- and this is from speaking with appellate attorneys, I am not an appellate attorney -- is that a motion is made to the Appellate Division and our office gets a chance to respond to it. Or, if ordered to turn it over, turns it over in camera to the Appellate Division to make a review.

My understanding of what Mr. Levine wants to do, he wants to cut out that process because he wants to make

specific arguments in his appellate motion. He doesn't want them to make an independent review, so he's trying to end-run around the procedure of what is actually the way this is supposed to go.

THE COURT: Ms. Baraiola, we've been through this. And now he's going to tell me he can't make substantive arguments.

MS. BARAIOLA: He can, your Honor. An appellate argument is based on the trial record. He has things in the record that he can argue on. He can ask them to revisit your decision.

THE COURT: I'm not going to keep going over this. Ms. Baraiola, hold on.

Didn't I just say on the record he has to make the motion to the Appellate Division. I don't have a problem with it, then he has to make the motion to them.

MS. BARAIOLA: Then you said you would consider letting him have what he inadvertently came in contact with.

THE COURT: I'm not going to ask him to destroy it. I am not going to ask him to delete the photographs.

MS. BARAIOLA: I do think he should.

THE COURT: I'm ruling against you on it.

MS. BARAIOLA: I would like to inquire whether he has distributed it to anybody else.

THE COURT: I thought I said this morning, for appellate purposes only, not to be distributed, not to be posted, not to be shared. And it should still be sealed and it should not be a part of the appellate record where anybody can enter the data and see it.

MS. BARAIOLA: Correct.

MR. LEVINE: Interestingly, Judge, when I was at the Appellate Division for something else, I think maybe filing the extension on this, I asked somebody there about it. I said, there was something in the record that doesn't seem sealed but it says "no public record" on it. If I want to refer to it in the papers in my brief, how do I reference it? Does it have to be under seal or something like that so that it is not for all the world to see, given that everything is public record. And the clerk told me that the appeals were not public record, which was surprising to me. I thought that people could access the briefs somehow someway.

MS. BARAIOLA: I believe you can.

MR. LEVINE: But the clerk told me no. He may have been mistaken, he may have misunderstood but I was a little surprised that he said, "you don't have to worry about it, you can file whatever you have to file."

THE COURT: I don't know that to be the case either. Ms. Baraiola, I agree with you. I'm surprised.

MS. BARAIOLA: Because I'm going to have to go explain to the appellate lawyer that I've been speaking to, just so I understand what is happening, Mr. Levine has been directed to go through the regular channels -- which is a motion to the Appellate Division -- to review these records in camera and nothing is being released to him today?

THE COURT: Correct.

MR. LEVINE: And just so I'm clear, you're saying that --

THE COURT: You're stuck.

MR. LEVINE: That the protective order is not lifted as to me at this point, even as to the things that I've already seen. But so far as it may matter to the Appellate Division, you don't have a problem with me seeing it or referencing it.

THE COURT: Correct. But I don't want that to be a public record. So however you have to file your papers.

I'm surprised. Excuse my ignorance, I've only done Federal appeals in one state, I remember, years ago.

I'm surprised you can't make a motion to the Appellate Division with your reasons to ask them to disclose the records for you and then you can supplement your brief once they hopefully agree to grant your request. I don't understand why that's not an option for you.

MR. LEVINE: I think what they would normally do

is do the in camera thing that the People are suggesting and that the People prefer they will not release them to me and they'll say, don't worry, we'll look at it and look out for you.

I would like there to be an advocate's position taken. When People provide an ex parte motion, obviously they don't lay out all the evidence. Everything is decided in a vacuum against the Defense. The Appellate Division is going to be in the same position that way if I have to say things in it in a vacuum to pretend I don't know what I know.

THE COURT: I think I'm clear on the record.

Make your motion to them. It's my intention and it was my intent at the time that you would be able to use the records for your appellate purposes.

MR. LEVINE: Thank you.

THE COURT: Make your motion.

MR. LEVINE: Okay. Thank you.

MS. ERRAIOTA: When you say his intention to use it for appellate purposes, what does that mean?

THE COURT: I believe this would have been an issue on appeal and I believe Defense would have been able to move to get those records. They would have been provided to them and they could have made whatever arguments they wanted to make about any mistakes I may have

made. It is not even Judge Chun, that was pre-trial. I'm the trial judge.

I made a decision not to disclose those records and I assumed at that time that that would have been part of the appeal that the Defense could make directly to the Appellate Division upon review of those records.

I thought they could file a motion to receive the records and appeal my decision based on the content and the substance of those records that were not disclosed at the time of trial.

It is different. It is a whole different analysis. To me it is a completely different analysis. And I know I've made motions like that in Federal court. This is different -- or I believe I've made similar motions in Federal Court. This, I understand, is different. There is a whole different analysis in terms of disclosure, pretrial and during trial if the door was open and post trial for appellate purposes.

MS. BARATOLA: When you said for appellate purposes, I want to clarify. It would be made available for the Appellate Court to review if they want to review the decision?

THE COURT: What I thought is that the Defense would be able to see it upon their motion, be able to receive the records, and be able to file a substantive

appeal based on the substance of those records and why it should have been disclosed or why the Court made a mistake, why I was wrong.

I thought they can substantially make that argument on appeal based on their review of it for appellate purposes, not just an in camera inspection. I thought that if they moved properly that it would be disclosed to them at some point and they can file their appeal based on the records. They would be looking at the records themselves.

That was my intention at the time.

MS. BARAIOLA: Okay.

THE COURT: And sometime later, upon their request, it would be granted.

They can look at it. They can file whatever appeal they wanted to.

MS. BARAIOLA: Admittedly, I've spoken to someone in appeals. I don't actually know all the ins-and-outs of all of this. I've already told you what they told me the normal way of doing this is.

THE COURT: I'm going to leave it to the First Department. That's it.

The preceding transcript is certified to be a true and accurate record of the proceedings. [signature]

Lisa S. Webb, CSR, Senior Court Reporter

# Prosecution's Appellate Division Affirmation in Opposition (June 5, 2019)

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK,<br><br>Respondent,<br><br>-against-<br><br>SANJAY TRIPATHY,<br><br>Defendant-Appellant. | AFFIRMATION IN OPPOSITION TO DEFENDANT'S MOTION<br><br>N.Y. Co. Ind. No. 2720/16<br><br>Cal. Date: June 10, 2019 |

KATHERINE KULKARNI, an attorney duly admitted to practice before the courts of this state, affirms that:

1. I am an Assistant District Attorney, of counsel to CYRUS R. VANCE, JR., District Attorney of New York County, and I submit this affirmation in opposition to defendant's motion for an order to unseal documents in the trial court's file.

2. The factual allegations herein are made upon information and belief, the sources of which are the files of the District Attorney's Office, my conversations with Assistant District Attorney Kristen Bartolola, and the papers filed by defendant with this Court.

3. Defendant's conviction stems from his violent sexual assault of a woman he met on the dating website Seeking Arrangement. After messaging each other back and forth, defendant and the victim exchanged phone numbers and agreed to meet on June 15, 2016. They met for dinner at 6 p.m. that evening, and then went to the W Hotel in Manhattan, where they spent some time at the hotel bar before heading up to defendant's hotel room. Once inside the hotel room, defendant locked the door and became aggressive. Despite the victim

telling him no and saying that she wanted to leave, defendant forced his fingers inside her vagina and anus. When the victim tried to run from the room, defendant dragged her back to the area near the bed, repeatedly punched her in the face and the head, lifted her onto the bed and strangled her. Defendant threatened to anally rape the victim and continued to punch her until she agreed to perform oral sex on him. Once he had ejaculated into her mouth, defendant told the victim to wipe off her face and threatened her if she reported the incident to the police. After the victim refused defendant's offer to pay her, she left the hotel room and approached a police van across the street. The police then arrested defendant inside the hotel room. A search of the room revealed blood splattered on the wall next to the bed, the table next to the bed, the floor, and all over the bedspread. The victim suffered extensive bruising to her face, neck, head, and body, as well as swollen lips, black eyes, and petechiae, which is a sign of being strangled.

4. Before trial, in response to defendant's request for *Brady* material, the People provided the trial court with messages between the victim and other men from the Seeking Arrangement website. Although the People did not believe that the messages constituted *Brady* or *Giglio* material, they requested *ex parte* that the court review the messages in-camera just in case. The People also requested that defendant's *Brady* motion, the People's response, and the court's decision be sealed due to the sensitive nature of the information discussed. After reviewing the messages, the Honorable Michael Obus determined that the People did not need to disclose the messages to the defense as *Brady* or *Giglio* material. Justice Obus also issued a protective order sealing the documents from public disclosure (*see* Defendant's Exhibit B at 6, 10-11).

5. Justice Erika Edwards subsequently reviewed the messages in-camera and agreed that they did not need to be disclosed to the defense (*see* Defendant's Exhibit B at 10-11).

6. Trial began before Justice Edwards and a jury on May 15, 2018. On May 30, 2018, the jury found defendant guilty of one count each of first-degree criminal sexual act, first-degree sexual abuse, second degree assault, second-degree strangulation, and second degree unlawful imprisonment. On July 11, 2018, the court sentenced defendant to concurrent prison terms on those counts, the longest of which was seven years, to be followed by seven years of post-release supervision. On July 12, 2018 defendant filed a Notice of Appeal.

7. While preparing his Appellant's Brief, defendant's appellate counsel went to the clerk's office and was mistakenly provided with the sealed messages in the court's file. Defense counsel took photographs of some of the messages using his cell phone (Defendant's Exhibit B at 5-6). When counsel returned to the clerk's office to again view the messages, the clerk's office realized the mistake and removed the documents before handing the file to counsel (*id.*)

8. On March 12, 2019, the parties appeared before Justice Edwards, and defense counsel requested that the court unseal the messages so that he could use them to develop his arguments on appeal (*see* Defendant's Exhibit B). Justice Edwards told defendant that he needed to file a motion with this Court requesting that the documents be unsealed. The court suggested that the documents be submitted "in a sealed capacity so that the Appellate Division can review them" (*id.* at 12).

9. Now, by papers dated May 23, 2019, defendant seeks to unseal the messages between the victim and other men on the Seeking Arrangement website, copies of which are in the trial court's file. He also requests that this Court unseal "the People's *ex parte* motion" asking

Justice Obus to review those messages, as well as "Judge Obus's decision" (Defendant's Motion at 6).

10. The People oppose defendant's request. I have spoken with Assistant District Attorney Kristen Bataiola, who prosecuted this case. She informed me that the court sealed the documents in order to protect the victim from embarrassment, harassment, and intimidation, and these concerns have not changed. In particular, the documents contain sensitive information about the victim's sexual conduct that have no connection to the criminal case against defendant. And these concerns are especially amplified in this case, because it has been widely covered in the news. Thus, the trial court certainly had "good cause" to seal the messages and any documents discussing them in order to spare the victim "intimidation . . . or unjustified annoyance or embarrassment." CPL § 240.50(1); *see Matter of Dorothy D.*, 49 N.Y.2d 212, 215 (1980) ("The inherent power of courts to control the records of their own proceedings has long been recognized in New York"). Of course, contrary to defendant's claim (*see* Defendant's Motion at 7), the need to protect the victim from any additional and possibly public harassment has not changed simply because this case is now at the appellate stage.

11. Notably, too, both Justice Obus and Justice Edwards determined that the People did not need to disclose these documents to the defense because they were not material to defendant's guilt or innocence. Nor were the messages admissible as evidence at trial, because they were protected under the Rape Shield Law, which precludes evidence of a victim's sexual conduct unless it falls within one of the five statutory exemptions. *See* CPL § 60.42. The fact that these documents were irrelevant to the criminal case against defendant and inadmissible

at trial provided all the more reason to exercise caution by sealing them in order to protect the victim. Notably, while defendant seeks to argue on appeal that these messages were admissible at trial, his motion papers provide no reason to believe that the documents now fall within one of the statutory exemptions (*see* Defendant's Motion at 9-14).

12. Further, defendant will be able to obtain a fair appellate review of his proposed claims without the disclosure of these materials (*see* Defendant's Motion 6). For example, in *People v. Castillo*, 80 N.Y.2d 578, 580 (1992), "[t]he sealed record" was "supplied to the Appellate Division," and subsequently, to the Court of Appeals, and those Courts upheld the search and the trial court's denial of the defendant's motion to suppress based on their own review of the sealed records. *See also People v. Meras*, 143 A.D.3d 423, 424 (1st Dept. 2016) (declining to revisit Court's prior order denying defendant's motion to unseal after reviewing materials in-camera and determining that there was probable cause for issuance of search warrant); *People v. Molina*, 93 A.D.3d 459, 459 (1st Dept. 2012) (after reviewing sealed minutes in camera, rejecting defendant's challenge to re-presentation of the case to a second grand jury). Here, too, the People have no objection to providing the documents defendant seeks to this Court for in-camera review, so long as they are not disclosed to the defense.

Wherefore, the People respectfully request that defendant's motion be denied.

Dated: New York, New York
June 5, 2019

Katherine Kulkarni
Assistant District Attorney
(212) 335-9707

cc: Arnold J. Levine, Esq.
233 Broadway, Suite 900
New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

SANJAY TRIPATHY,

Defendant-Appellant.

AFFIRMATION IN OPPOSITION TO DEFENDANT'S MOTION

Ind. No. 2720/16

Cal. Date: June 10, 2019

CYRUS R. VANCE, JR.
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Katherine Kulkarni
Assistant District Attorney
Of Counsel