SUPREME COURT OF THE STATE OF NEW YORK CRIMINAL TERM

COUNTY OF NEW YORK PART 23

- - - - - - - - - - - - - - - - - - - - - - x

THE PEOPLE OF THE STATE OF NEW YORK, Indictment No.:

-against- 2720-16

SANJAY TRIPATHY, Proceedings

Defendant.

- - - - - - - - - - - - - - - - - - - - - - x

100 Centre Street
New York, New York 10013
April 11, 2024

B E F O R E:

THE HONORABLE ANN THOMPSON,
Supreme Court Justice

A P P E A R A N C E S:

FOR THE PEOPLE:

ALVIN BRAGG, ESQ.
District Attorney, New York County
BY: SHANNON LUCEY, ESQ.
Assistant District Attorney

FOR THE DEFENDANT:

LAW OFFICES OF JOEL B. RUDIN, P.C.
Attorneys for the Defendant
152 West 57th Street, 8th Floor
New York, New York 10019
BY: JOEL B. RUDIN, ESQ.

COURT CLERK: Calling number seven and number eight, Sanjay Tripathy, indictment number 2720 of 16, and HGJ 71582 of 24.

Appearances, please.

MR. RUDIN: For the defendant, Joel Rubin, 152 West 57th Street, New York, New York.

Good afternoon, Your Honor.

MS. LUCEY: Good afternoon.

Shannon Lucey for the People.

THE COURT: Good afternoon.

After several discussions, I do believe we have a disposition; is that correct?

MS. LUCEY: That's correct, Judge.

THE COURT: One of you put the terms of what you believe the disposition to be on the record.

MR. RUDIN: Your Honor, I have not seen the accusatory instrument.

THE COURT: Okay.

MS. LUCEY: That's the SCI?

MR. RUDIN: Yes.

MS. LUCEY: I e-mailed it.

MR. RUDIN: Can I see it?

MS. LUCEY: Yes. I am giving a copy over to the defense of the SCI, the waiver of right to appeal and the waiver of indictment, as well as I have already turned over

a copy of the order of protection.

The only difference between these items and the ones that I e-mailed to the Court and defense yesterday is that I added the SCI number to them.

THE COURT: Okay.

MS. LUCEY: Does the Court want a copy?

THE COURT: I have the superior court information.

Once the waiver of appeal is executed, I will get a copy of that.

You have now seen a copy of the superior court information?

MR. RUDIN: Yes, Your Honor.

THE COURT: Tell me, ADA Lucey, what is the offer?

MS. LUCEY: At this time, it is a plea to the count in the superior court information of assault in the second degree, an allocution to the elements of that crime and the proposed sentence would be that Your Honor would find mitigation and sentence the defendant to one day.

That can, I believe, Your Honor indicated be consistent with the time he was incarcerated in state prison, which was just over four and a half years, and the date range for that was July 19, 2018, to November 22, 2022.

THE COURT: Okay.

I would run it nunc pro tunc to July 19th of 2018.

MR. RUDIN: That's fine.

THE COURT: Okay.

MR. RUDIN: Your Honor, the additional understanding of the parties is that the present indictment will be dismissed and may not be revived unless the plea and/or the sentence is vacated, in which case it will be subject to being revived.

Following sentencing, the District Attorney's Office will return to Mr. Tripathy his passport and Indian identification, documents and there are additional personal belongings that we have been told can be obtained from the police department, One Police Plaza. I know that the People are trying to facilitate that.

The People will not oppose a certificate of relief from civil disability or relief under the Clean Slate Act.

Mr. Tripathy will be waiving his appellate rights and he will agree to an order of protection, which I understand is for an eight-year term?

THE COURT: Yes.

MR. RUDIN: But I was wondering if Your Honor would impose it from the date of his original sentence as opposed from today's date, or, at least, from the date he was released from prison, which was almost two years ago.

THE COURT: I will think about that. There might be another solution as opposed to backdating something.

Go ahead.

MR. RUDIN: Mr. Tripathy is prepared to waive the presentence investigation report and proceed directly to sentencing.

I know that his criminal history check showed that he has not been arrested since he was released from prison.

THE COURT: Okay.

And then there was some concern about medical records?

MS. LUCEY: Yes, Judge.

Before I ask Your Honor to return the medical records that we served for in camera review as well as a request to the defense that the discovery in this case be maintained in the sole custody of the defense's file or, in the alternative, return it to me or shred it.

I do want to just expand a bit on the record just made.

THE COURT: Okay.

MS. LUCEY: I just want to be clear, this resolution today has been the result of lengthy discussions between the defense and the People.

There has been much back and forth about what an appropriate offer would be in this case and we have obviously settled on the D violent felony of assault in the second degree.

I just want the record to be clear that the

indictment that is currently pending against Mr. Tripathy, which is 2720 of 2016, is being dismissed once we finish with this plea and sentence, but it's only being dismissed in the interest of justice because of the plea to the SCI of 71584 of 24, in order to bring closure to both Mr. Tripathy and the victim.

I want the record to be clear on that.

THE COURT: While you are talking, why don't you put on the record what the mitigation actually is?

MS. LUCEY: Sure. I believe that Your Honor can find mitigation under penal law section 70.02 sub three B one because there is specifically an interest of justice in acknowledging that Mr. Tripathy has served approximately four and a half years in state prison, that the minimum state prison sentence would be two years under the charge he is pleading to and the maximum sentence is seven years, and that is the maximum sentence even if he was to be retried on the indictment.

With all of those considerations in play and to bring this alternate sentence is consistent with public safety, does not depreciate the seriousness of the crime.

We do think that mitigating circumstances exist and for the primary reason of bringing closure both to Mr. Tripathy and the victim.

THE COURT: So sir, with respect to the certificate

of relief from disability, that I can sign.

With respect to the Clean Slate Act, the only thing I can say is there nothing that bars him from applying for expungement of any record or sealing of any record.

That is not something I can promise him, so to the degree that his application complies with the law, then so be it, but if it does not comply with the law or if, for whatever reason, he does not qualify based on what his criminal conviction is, I want it to be clear that that is not something I can control and is not a promise of this plea that he ultimately benefits from the Clean Slate Act.

MR. RUDIN: Understood.

THE COURT: Okay.

MR. RUDIN: Your Honor, may I add one thing?

THE COURT: Yes.

MR. RUDIN: I understand the People's position and thought process with respect to this resolution.

I want to make clear that Mr. Tripathy from the very beginning of this case has denied the allegations against him other than the assault.

I just wanted to make that record.

It does not impact, one way or the other, his plea today.

THE COURT: Do you want to speak to the term of the order of protection before we proceed?

MR. RUDIN: Yes, Your Honor.

Mr. Tripathy had no contact with the complainant since he was arrested almost eight years ago and certainly since his release from prison approximately November 22nd of 2022, he certainly had no contact with her and has absolutely no intention of contacting her, and I think, based on his whole life history, this is abrasional.

In any event, I think that since he was sentenced originally on May 30th of 2018, when I presume an order of protection would have been entered, I don't know if it makes sense to enter a new one now, when that one has been in place and has practically run its course.

THE COURT: Is the understanding that this would quality under a family offense based on intimate partnership or are we treating this as if it's not?

MS. LUCEY: I did a nonfamily order.

THE COURT: The duration of the order then ultimately shall not exceed the greater of five years from the date of sentencing or three years from the date of the expiration of the maximum term of an indeterminate sentence.

Five years it is.

MS. LUCEY: Yes. I think it would be make more sense to impose the lower end, if there is a range, than to predate.

THE COURT: So five years it is.

MR. RUDIN: Five years from?

THE COURT: From today.

MS. LUCEY: I know the defendant has the waivers at this time, but they are more expansive.

I want to make sure the record is clear that he had an opportunity to review them before signing.

MR. RUDIN: Do you want him to sign it now?

THE COURT: Did you discuss it with him?

MR. RUDIN: Yes.

THE COURT: He can signs those now and then I need to see them so I can make sure I can include everything that should be included in my allocution.

Counsel, do you want to enter the plea?

MR. RUDIN: Your Honor, the defendant pleads guilty to superior court information 71584 of 24, pursuant to the understandings that we put on the record before.

THE COURT: Let's arraign him on the superior court information, please.

COURT CLERK: Sanjay Tripathy, the District Attorney has filed superior court information number 71584 of 24, charging you with the crime of assault in the second degree.

How do you plead to the charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Mr. Tripathy, do you swear or affirm that you will tell the truth, the whole truth and nothing but the truth during the course of this proceeding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, do you waive further action on the felony complaint, waive prosecution by information and consent to having the case transferred to Supreme Court, and have the defendant prosecuted by a superior court information?

MR. RUDIN: Yes, Your Honor.

THE COURT: Mr. Tripathy, your lawyer has said that you wish to proceed by way of superior court information rather than an indictment.

A superior court information and an indictment are the same thing, in that each is a written indictment that charges a person with a crime.

The difference between the two is that an indictment is issued about a Grand Jury after a Grand Jury has received testimony and other evidence establishing that a person has committed a crime.

A superior court information is issued by the District Attorney upon consent of the defendant.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you spoken with your lawyer about

waiving your right to be prosecuted by an indictment and consenting to be prosecuted by a superior court information?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with the services of your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that since you are charged with a felony under New York State law, you have the right to have the case presented to a Grand Jury and to be prosecuted by an indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you also have the right to testify before the Grand Jury and have the Grand Jury vote on the charges that the prosecution submits to the Grand Jury?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the superior court information will have the same force and effect as an indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you waive such right and consent to be prosecuted by a superior court information?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Other than the plea agreement that we have just discussed, has anyone else made any other

promises, commitments or representations of any kind to you to get you to consent to prosecution by a superior court information?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened, forced or pressured you to consent against your will?

THE DEFENDANT: No.

THE COURT: Have I or your lawyer, or anyone else, said anything to you to have you consent against your will?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you, therefore, consenting voluntarily and of your own free will and choice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm holding in my a hand a one-page document titled waiver of indictment.

Is this your signature, the middle signature at the bottom what is my left, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And does your signature indicate that you have read, understood and that you knowingly and voluntarily waive your right to be prosecuted by an indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, have you signed the waiver?

MR. RUDIN: Yes, Your Honor.

THE COURT: And Ms. Lucey, have you signed the waiver as well?

MS. LUCEY: Yes.

THE COURT: The Court is satisfied that the defendant's waiver is knowing, intelligent and voluntary.

I am approving the waiver and I'm signing it accordingly.

Sir, your lawyer has advised me that you wish to plead guilty to the D violent felony, which is the sole count on the superior court information and that is assault in the second degree in violation of penal law 120.05 subdivision one.

As part of this agreement, you would and have, in open court, execute a waiver of your right to appeal and as part of the promise, you would be sentenced to one day jail with the understanding that that sentence would run nunc pro tunc to July 19th of 2018.

The understanding is that you have already served that one day and would get credit for that time, yes?

THE DEFENDANT: Yes, Your Honor.

THE COURT: There would also be a five-year full order of protection issued and also as part of this agreement, the indictment would be dismissed unless the plea or sentence is ultimately vacated in some way.

You would receive your passport back and any

personal belongings that are currently in the possession of the New York State Police Department. You would receive those back.

I have agreed and I will sign a certificate of relief from disability once one is provided to me.

Again, I take no position on the Clean Slate Act. I cannot make you a promise that you would benefit from it. I'm not telling you that you would not. There is nothing that I am going to say now to intentionally stand in your way from benefitting from that, but your benefitting from that act is not a promise of this plea.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: There is no bar to appealing to that act.

THE DEFENDANT: I understand.

THE COURT: Everything that I have just described to you, is that what you understand the promise to be?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you are aware that there have been lengthy discussions between the ADA, my court staff and your attorney concerning this disposition, yes?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, I should ask you, any current motions that are outstanding, you are now withdrawing those

by virtue of this plea, yes?

MR. RUDIN: Yes.

THE COURT: As I have just described it to you, is that what you wish to do today?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you are, in fact, guilty to assault in the second degree?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had a full opportunity to discuss this plea and sentence with your attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has he answered all your questions to your satisfaction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have any other promises or representations been made to you to persuade you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Have I, your lawyer or anyone else said anything to you to have you plead guilty against your will?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened, promised or coerced you to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you, therefore, pleading guilty

voluntarily and of your own free will and choice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you today under the influence of any drugs, medication or alcohol that might affect your ability to understand what is happening here in Court today?

THE DEFENDANT: No, Your Honor.

THE COURT: And you understand that this plea of guilty will have the same force and effect as if you had gone to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So by pleading guilty, you are giving up your right to remain silent, your right to make motions and to suppress evidence, your right to a trial by jury, which includes your right to testify on your on behalf, your right to cross-examine the People's witnesses and to call witnesses of your own.

You also give up the presumption of innocence and the right to have the People prove your guilt beyond a reasonable doubt.

Do you understand all of the rights that you are giving up?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is anyone forcing you to give these rights?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that you are giving up any defenses to these charges that you may have by pleading guilty today?

THE DEFENDANT: I didn't understand the question.

THE COURT: If you believe that you have an offense to any of the charges that are charged against you, by pleading guilty today, you are acknowledging that you could not raise these defenses at any other point because you are pleading guilty in the case.

Do you understand?

THE DEFENDANT: I understand.

THE COURT: As part of this agreement, you are being asked to waive your right to appeal.

Your right to appeal is separate and distinct from the trial rights that I have just described to you.

Your right to appeal is the right to have a court that is above my level, known as an appellate court, review any decisions that have been made at my level.

For example, if you took this case to trial, you could appeal any decision made before the trial. You can appeal any decisions made during the trial. You could appeal the verdict as well as the sentence.

By pleading guilty and signing this waiver, you are giving up those rights and, as a result, the conviction by about this plea and the sentence will normally be final.

If you cannot afford the cost of an appeal or a lawyer for the appeal, the state would pay for both of those.

There are a limited number of claims you can still raise even after you have signed this waiver of appeal.

Those include any claim to a constitutional speedy trial violation, whether this plea is voluntary, whether the sentence is legal, whether you signed this waiver of appeal voluntarily, and whether you are competent to stand trial. You are always able to raise those claims.

Do you understand the waiver of appeal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you spoken to your attorney about this waiver of appeal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you did so before we started this conversation?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And there are some additional things that are listed in this waiver of appeal that are listed that I have not already described to you.

You acknowledge that this plea to this superior court information is the product of lengthy discussions

between you and your attorney; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that this plea is with the effective advice of your counsel, specifically rather than pleading guilty to the indictment that was previously charged, you are now pleading guilty to a superior court information, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you understand that this charge would normally be barred by the statute of limitations, but by signing this waiver of appeal, you are waiving any objection to that bar; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you willing to waive your right to appeal in return for the pleading and sentence agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you doing voluntarily and of your own free will and choice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you signed the waiver of appeal, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I'm holding essentially a one-page document.

Is this your signature at the top, what is my left?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Does your signature indicate that you read, understood and that you knowingly and voluntarily waive your right to appeal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, have you also signed the waiver?

MR. RUDIN: Yes, Your Honor.

THE COURT: The Court finds the defendant's waiver is knowing and voluntarily.

Sir, has your attorney advised you on your right to discovery?

THE DEFENDANT: (No verbal response.)

THE COURT: In other words, you are entitled to all of the items and information that relate to this case that are in the custody, the possession, or the control of the prosecution, as well as the police.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand that during the course of the last year, there have been lengthy discussions about any items that have not been turned over to you and the Court interceded and directed the People to provide additional material, but there has been lengthy discussion about certain materials that your counsel believes you were

entitled to, and some of which were agreed to turn over and some of which you were not necessarily entitled to.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Do you understand that the prosecution is not conditioning this plea offer on you waiving any right to any discovery that you are entitled to.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Do you understand that by taking this plea, you will not receive any further discovery?

THE DEFENDANT: I understand.

THE COURT: Counsel, have you discussed any relevant immigration consequences with your client?

MR. RUDIN: Yes, Your Honor. There are none.

THE COURT: Sir, I'm not asking you if you are or you are not. By law, I'm required to tell you that if you are not United States citizen or in this country legally, this plea of guilty will result in your deportation, exclusion from admission to the United States, or the denial of United States citizenship.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Have you had enough time to discuss any potential immigration consequences with your attorney?

THE DEFENDANT: We have discussed it, Your Honor.

THE COURT: And do you need any additional time?

THE DEFENDANT: No, Your Honor.

MR. RUDIN: Your Honor, can I have one moment?

THE COURT: Yes.

MR. RUDIN: That's okay, Your Honor.

THE COURT: Do you understand that if it is discovered that you will face any negative immigration consequence, I will not give you back your plea?

THE DEFENDANT: I understand.

THE COURT: Based on the sentence, I think this is not something that will necessarily apply to you, but I'm still going to tell you since the sentence is still one day jail.

You give up your right to vote while you are incarcerated. Your right to vote will be restored upon your release from incarceration.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Counsel, you are waiving I & S and we are proceeding directly to sentence, yes?

MR. RUDIN: Yes, Your Honor.

THE COURT: Any questions you have, sir, before I take your plea?

THE DEFENDANT: No, Your Honor.

THE COURT: Anything that I have left out that you would like addressed before I take his factual allocution?

MS. LUCEY: No, Judge.

THE COURT: Counsel?

MR. RUDIN: No, Your Honor.

THE COURT: Sir, do you admit the following facts that in the County of New York, on or about June 15, 2016, to on or about June 16, 2016, with the intent to cause serious physical injury to a person whose identity is known to the District Attorney's Office, you caused such injury to such person?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And again, I & S is waived and I should state on the record if I did not already, I find that based on my extensive knowledge of the case, as well as all of the mitigation that the People have previously made a record of, I do find there is mitigation and for that reason, a definite sentence is appropriate in this manner, especially recognizing that Mr. Tripathy has served a period of at least four years of incarceration for the crimes that were alleged in the indictment.

Can we arraign him on the plea?

COURT CLERK: Sanjay Tripathy, do you now withdrawn previously entered pleas of not guilty and do you now plead guilty to the crime of assault in the second degree to cover

and satisfy superior court information number 71584 of 204, is that your plea?

THE DEFENDANT: Yes.

COURT CLERK: Thank you.

THE COURT: Can we arraign him for sentence?

COURT CLERK: Sanjay Tripathy, you are before the Court for sentence following your conviction by plea to the crime of assault in the second degree.

Before being sentenced, the Court will allow you, your attorney and the ADA an opportunity to address the Court with any matters relevant to sentencing.

People?

MS. LUCEY: The People rely on the record that has been made.

COURT CLERK: Counsel?

MR. RUDIN: Defense relies on the record before the Court.

COURT CLERK: Mr. Tripathy, would you like to say anything before the Court?

THE DEFENDANT: No, Your Honor.

THE COURT: The Court imposes the promised sentence of one day jail. That sentence is to run nunc pro tunc to July 19th of 2018. A Five-year full order of protection is issued. Counsel, as to surcharges, but I believe he might have paid them?

THE DEFENDANT: Your Honor, when I was in prison, they took money from my account so it's settled.

THE COURT: Okay. People, as to the indictment?

MS. LUCEY: Your Honor, at this time the People are respectfully requesting that you dismiss indictment number 2720 of 2016, solely for the purposes of being in the interest of justice and bringing closure to the victim and Mr. Tripathy.

Again, for any reason, if the SCI disposition is vacated or otherwise that it has been the understanding between Mr. Rudin, the defendant and myself, that they would stipulate that should the plea be overturned and the SCI for any reason, we could restore the original indictment.

THE COURT: That was part of the agreement?

MR. RUDIN: Yes.

THE COURT: That indictment is dismissed based on the People's application now as well as the entire record that has been made.

I will leave it to you all to address the passport return and the belongings.

Counsel, if you forward your certificate of relief from disability I will sign it.

Anything else from either side?

MS. LUCEY: As I stated earlier, that the Court would return the medical records -- the mental health

records of the victim, and that the discovery that was turned over in indictment 2720 of 2016 remain in the sole custody of defense or returned to the People, or shredded, but no way be disseminated by the defendant or the defense.

THE COURT: And as an officer of the court, you agree to that?

MR. RUDIN: Yes.

THE COURT: Just reach out to us to arrange transfer of the medical records back.

MS. LUCEY: Yes.

THE COURT: Thank you.

CERTIFICATION

I certify the foregoing to be a true and accurate transcription of my stenographic notes.

Brett Urgo

__________________________________

BRETT URGO, SENIOR COURT REPORTER