LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

JACOB "COBY" LOUP
DAVID E. RUDIN

DAVID S. KEENAN
(OF COUNSEL)
THELONIOUS COLEMAN
(PARALEGAL)

March 28, 2023

**By FedEx**

Honorable Alvin Bragg
District Attorney
One Hogan Place
New York, New York 10013

Re: *People v. Sanjay Tripathy*
Indictment No. 2720/2016

Dear Mr. Bragg:

I have not received any response from your front office—indeed, from anyone in your office—concerning my 17-page letter to Sex Crimes Unit Deputy Chief Shannon Lucey dated January 30, 2023, urging the dismissal of this case due to egregious misconduct by several prosecutors in your office and my client's innocence. You will remember that you agreed to vacate the conviction in this case last fall, after the defendant already had served 4 ½ years in prison, based upon numerous text messages, undisclosed by your office at trial, which proved the complainant to have given false testimony. ADA Lucey has told me the January 30 letter was forwarded to your chief assistant and you likely were aware of it. I am writing now to make sure our request for your personal review of this case this doesn't slip through the cracks (I know you have a lot on your plate), and also to bring to your attention additional evidence of misconduct we have received in discovery since January 30 which implicates current high-level supervisors in your office.

As discussed below and in my letter to ADA Lucey, a copy of which is enclosed, prosecutors elicited from an indispensable complaining witness, M.R., trial testimony that they knew was shot through with lies, all while deliberately concealing previous electronic communications by M.R. that proved her a liar. Newly disclosed evidence shows that from the very beginning of the case, prosecutors knew M.R.'s story was made incredible by these messages, and they told her that if she didn't own up to what the messages proved she'd have no credibility before a jury. Two years later, having succeeded in misleading a judge into not requiring them to disclose the messages, the prosecutors then presented the very testimony from M.R. that they had told her would be incredible. They were emboldened to do this because they knew the court's ruling would let them get away with it. Former Sex Crimes Unit Chief Martha Bashford and assigned line assistant Kristen Baraiola were the main perpetrators of this deception. The Appeals Bureau then covered it up. The new discovery appears to show that

Deputy Chief Lucey and possibly current Chief Nicole Blumberg also played a role in the misconduct.

I've been practicing criminal defense and dealing with prosecutorial misconduct issues for many years, and this case presents probably the most serious example of *Brady* suppression I have ever seen. The concealed evidence is highly material in that, in a case that is almost a pure credibility battle, it discredits the complainant and corroborates the accused. The misconduct was deliberate and implicates not just one errant prosecutor but unit chiefs, deputies, and the Appeals Bureau. And the result was an indefensible 4 ½ years in prison for my client. Rather than ratify the pattern of misbehavior in this case, you should throw this case out now. It should not be necessary for the defense to tell the entire sordid story in a motion to dismiss and at an evidentiary hearing, at which—and I don't write this lightly—multiple members of your office would be well advised to plead the Fifth Amendment. Indeed, as the head of your law office, you are ethically obligated to take appropriate disciplinary and other action and to remedy the effects of the misconduct of your staff before the courts get involved. *See* ABA Criminal Justice Standards, Prosecution Function, Standard 3-1.12 (4th ed.).

**Relevant background**

This case arose out of a 2016 encounter between my client, Sanjay Tripathy, and M.R., that they arranged on the website SeekingArrangement.com ("SA.com"). At trial, M.R. alleged that she met Mr. Tripathy for dinner and drinks, and they then went to his hotel room, where he violently sexually assaulted her. Mr. Tripathy's defense, which he testified to at trial, was that he and M.R. had explicitly agreed to an exchange of sadomasochistic sex for $1,500; that she attempted to extort him for more money after their consensual encounter because her face was marked up and she would have to cancel appointments with other men; that he refused to give in and, furious at being extorted, physically assaulted her, though never sexually; and that she then falsely accused him of rape. The defense had minimal impeachment material to work with, and the jury resolved the credibility battle in M.R.'s favor. In 2018, Mr. Tripathy was convicted of criminal sexual act and related crimes and sentenced to seven years in prison.

I first wrote you directly about this case on October 20, 2022, after your PCJU had commendably disclosed to the defense, for the first time, messages that M.R. had exchanged with other men on SA.com. I forwarded you a letter I had written to the PCJU detailing how those messages proved that much of M.R.'s trial testimony was a lie and that the concealment of the messages had denied Mr. Tripathy a fair trial. About a month later, your office agreed to vacate the conviction. Mr. Tripathy was freed after serving 4 ½ years in prison.

The case was reassigned to Shannon Lucey, currently Deputy Chief of the Sex Crimes Unit. As noted above, on January 30, 2023, I sent a 17-page letter to ADA Lucey urging her to drop the case and outlining, preliminarily, the motion to dismiss that we intend to file should this prosecution continue. While a copy of the letter is enclosed, let me summarize it briefly to put in context the more recent revelations showing still more misconduct.

The encounter between M.R. and Tripathy occurred on June 16, 2016. On June 20, 24, and 30, M.R. gave detailed statements to lead prosecutor Kristen Baraiola and other DANY employees in which she denied ever exchanging money for dates or sex and denied any interest in BDSM. (Before Tripathy's trial, your office disclosed handwritten notes from these interviews, but they contained many redactions, which camouflaged the redacted notes' significance.) As early as June 27, when Tripathy made a bail application, your office knew Tripathy's defense was that this was a paid-for sexual encounter involving BDSM. At some point before trial, your office obtained M.R.'s SA.com messages with several dozen other men, which proved she had lied to prosecutors when she denied ever trading sex for money or being interested in BDSM. The messages also proved that M.R. lied about the same topics in a 2017 deposition in Florida (of which prosecutors were also aware), where she had accused a different man of an unrelated rape. Although the messages proved M.R. a liar, ADA Baraiola withheld the messages from the defense, and she also misled the court into approving her concealment of the messages.

My letter to ADA Lucey details how ADA Baraiola, joined by longtime Chief of the Sex Crimes Unit, Martha Bashford, then exploited this deception at trial. To summarize, ADA Baraiola, knowing that M.R. need not fear impeachment with the concealed SA.com messages, elicited the same misleading and outright false statements that M.R. had earlier made to prosecutors, presenting her testimony that she was financially well off, was on SA.com only to look for a serious long-term relationship, and had no interest in or experience with BDSM. The defense, although lacking M.R.'s SA.com messages with other men, did have her messages with Tripathy, in which she asked him about "$$ on a per meet" basis. But the prosecution successfully presented M.R.'s story that she essentially asked him this on a lark, that it was not something she did regularly, that she and Tripathy never discussed money again after that message, and that they never exchanged money.

On cross-examination, M.R. testified that she could not remember if she ever had discussed money with any other man on SA.com. This was too much for the court, which correctly recognized the contradiction between M.R.'s testimony and the messages it had agreed—because of the prosecutors' misinterpretations about the Rape Shield Law—need not be disclosed. The court then issued a bizarre order that the prosecutors interrupt the defense cross-examination to meet privately with M.R. to "refresh her recollection" with the messages, while still withholding the messages from the defense. When cross resumed, M.R. testified that she now remembered she had communicated with "other men regarding exchanging time for money." But the defense, lacking the messages to prove that M.R. had deliberately, extensively misled the jury, probed no further. The jury was thus left with the false impression that M.R. had been basically truthful; had legitimately forgotten that she had mentioned money to a couple other men, probably in the same casual way she claimed she had mentioned it to Tripathy; had never traded sex for money; and had no experience with sexual submission and domination. ADAs Baraiola and Bashford, knowing the SA.com messages proved this all false, said nothing and disclosed nothing, notwithstanding their clear *Brady* and *Rosario* obligations.

ADA Bashford cross-examined Mr. Tripathy after he, without ever seeing the SA.com messages, testified to multiple details that the messages corroborated. ADA Baraiola then capped off this farce of a trial by making numerous damaging summation arguments that she knew were either highly misleading or outright false in light of the messages.

After trial, the Appeals Bureau continued to argue, against all reason and ethical obligation, that the messages had "no connection to the criminal case against defendant" and were "not material to defendant's guilt or innocence." Appellate counsel for Mr. Tripathy was unable to make a convincing argument for the messages' materiality, as his motion for disclosure of the messages had been defeated by the D.A.'s Office, and he was unaware of much of the additional information discussed in this letter. Stymied by the misleading arguments of your Appeals Bureau (under your predecessor), Mr. Tripathy saw his conviction affirmed.

**New revelations in the recently obtained discovery**

After I sent the January 30 letter to ADA Lucey, we received additional disclosures from your office, and also obtained additional transcripts. These materials reveal that the misconduct was even graver than we previously knew and that it involved additional high-ranking prosecutors.

First, we now have the handwritten notes from your office's initial interviews with M.R. with the improper redactions removed. The unredacted notes reveal that, when prosecutors interviewed M.R. on June 30, they were in possession of at least some of M.R.'s SA.com messages, *and they themselves challenged her because the messages contradicted her statements to them*. The notes document that "KB"—Kristen Baraiola—told M.R., "Based on *past messages* you know what website's about," and "If [you] want [a] serious relationship – why would you get paid for going on a date – 2 ideas are inconsistent" (emphasis added). ADA Baraiola specifically confronted M.R. about a "message CW sent on SA.com" about receiving "$10,000 for 1 month" with a man. But M.R., denying the undeniable, insisted she was looking for a "serious relationship," that there was never any "expectation [of] sex," and that she had "never gotten paid" for a date.

The notes also reveal that Deputy Chief Lucey was involved in these early interviews with M.R. and similarly challenged M.R.'s statements. One newly-unredacted entry says:

> Lucey: You need to acknowledge negotiating money for something or *jury will never believe* parts of your story. Say why you're really on SA.com. Prove CW is credible, accurate, honest, that you should be credited over Δ (emphasis added).

Thus, ADAs Baraiola and Lucey expressed their disbelief about M.R.'s statements when they interviewed her early on and stressed the importance of her conforming her testimony to what the messages showed. But when M.R. instead doubled down on her lies, ADAs Baraiola and Bashford went along, choosing to elicit the same false statements from M.R. at trial that they

had previously challenged, while concealing the messages that proved the statements to be lies. Further, when M.R. claimed on cross that she couldn't remember whether she had discussed money with other men on SA.com, Baraiola and Bashford knew this was false—both because they knew M.R. had unforgettably had such communications with *dozens* of other men, and because Baraiola herself *had confronted M.R. with those very communications*. That Ms. Baraiola, and Ms. Lucey, had done so was improperly redacted out of the case.

Second, we have received notes your PCJU took during its recent interviews with ADA Baraiola and with M.R. One entry in these notes says, "*Niki Blumberg* stated *4 ADAs vetted/met with the CW*" (emphasis added). That is, Nicole Blumberg, whom you have appointed Chief of the Sex Crimes Unit, apparently is aware that four different ADAs knew of the contradictions between M.R.'s statements to your office and the SA.com messages, yet these ADAs all agreed the prosecution should proceed. It is unclear whether ADA Blumberg or the other ADAs knew of the improper concealment of information by Baraiola and Bashford at the time, or only more recently. If at the time, then their failure to blow a whistle on the misconduct would implicate them in the scandal as well.

Third, we have recently obtained, for the first time, jury selection transcripts. In them, Tripathy's attorney states on the record, "I've been told by another assistant who called me last week[,] who was part of the team until apparently she and the complainant butted heads over the truth[,] that they are not going to vouch for this complainant." I have not yet learned who this ADA was. But this remark clearly indicates that there was dissension in your office over whether to put M.R. on the stand knowing she was going to lie and that ADA Baraiola won out, apparently with the approval of the numerous ADAs who "vetted" M.R. In the end, they absolutely did "vouch" for her—despite knowing full well she was lying. Your office under *Brady* and the new discovery laws should disclose the identity of the ADA who was forced out or withdrew because of her concerns about the complainant's truthfulness.

Fourth, Tripathy's trial counsel also stated during jury selection that he was "concerned about how [the prosecutors] are going to put this woman on the stand knowing she's committed perjury and whether or not they are going to ask questions that suborn that perjury." Counsel voiced this concern because, while he never received M.R.'s SA.com messages with men other than Tripathy, and thus had no proof that she had lied about her history of exchanging money for sex and interest in being "submissive," he *did* have the message in which M.R. asked Tripathy about "$$ on a per meet" basis, and he knew M.R. had lied about this in the Florida deposition. In that deposition, she was asked three times whether she had ever discussed money with Tripathy, and she said no. When counsel voiced his concern that the prosecutors would suborn perjury, he did not know—could not know, without the concealed SA.com messages—that they were going to suborn apparent perjury of a much wider scope. But what is incredible is that ADAs Baraiola and Bashford were explicitly put on notice that the defense feared they were suborning perjury, and they went on to apparently do it anyway.

Fifth, the PCJU's notes of its interview with M.R. reveal that prosecutors *told* M.R. she need not fear being impeached with the SA.com messages and coached her when the court instructed them to "refresh her recollection" with the messages mid-trial. M.R. told the PCJU, "Prosecutors said they were only turning over the messages between her and Tripathy," M.R. "[t]hinks they said from the beginning the messages wouldn't come out," and M.R. "[t]hinks Kristen said they wouldn't be shown or put into evidence." When the court instructed the prosecutors to refresh M.R.'s recollection about past instances in which she discussed money with men, "Martha and Kristen told her what to say," though she "[c]ouldn't elaborate too much on this." It is most disturbing that prosecutors told M.R. the messages would not be disclosed and then proceeded with her false testimony having thereby encouraged and facilitated it.

Sixth, we have received screenshots from M.R.'s phone, which your office evidently generated shortly after M.R.'s encounter with Tripathy, showing M.R.'s activities on the "WhatsYourPrice" app. These screenshots were never previously disclosed to the defense and amount to an additional series of *Brady* and *Rosario* violations. The screenshots show that users of this app explicitly negotiate sums of money—which are framed in the image of a price tag—in exchange for dates, and that M.R. accepted offers of $300, $350, and $500, while refusing several offers that were too low. Further, directly contradicting her statements to prosecutors that she wanted a "serious relationship," she told one man on this app, "I am not looking for a serious relationship only fun."

In sum, within weeks after M.R. alleged that Tripathy sexually assaulted her, prosecutors obtained SA.com messages and WhatsYourPrice records that proved M.R. had lied to them and that supported Tripathy's defense. The prosecutors clearly understood the impeachment value of these materials, because they themselves confronted M.R. with the messages, pressing her to come clean. Instead, she clung to her lies. The prosecutors, presented with the choice whether to drop the case, disclose her lies to the defense, or join her in her deception, chose to join her in her deception. They even assured M.R. that her lies could not be exposed because the defense didn't have the messages. At a trial that was essentially a credibility battle between M.R. and Tripathy, your office perpetrated a fraud to falsely prop up its witness and win a conviction. ADA Baraiola spearheaded the deception, but multiple other prosecutors participated, including longtime chief of the Sex Crimes Unit Martha Bashford and, possibly, more than one current high-ranking supervisor.

**You should dismiss this case now**

Notably, this is not the first black eye for the Sex Crimes Unit. In *People v. Sinha*, 84 A.D.3d 35 (1st Dep't 2011), the First Department threw out a bribery conviction, and accompanying 2 ½-7-year sentence, "because the prosecution failed to fulfill basic disclosure obligations that are essential to a fair trial," *id.* at 38, by failing to disclose three emails in which prosecutors promised benefits to their witnesses, *see id.* at 41. So "inexcusable" and "intolerable" were these non-disclosures that the Court vacated the conviction "without regard to whether" the concealment of the evidence affected the outcome of the trial. *Id.* at 43. Around the same time,

the *Wall Street Journal* reported on the unit's delayed disclosures and non-disclosures in the prosecution of two police officers accused of sexually assaulting a woman—charges for which they were eventually acquitted.[1] The *Brady* violations and related misconduct in this case make the *Sinha* case look trivial in comparison.

In contrast with those cases, the District Attorney's Office under your leadership has, at least up to now, appeared to take its *Brady* and other disclosure obligations seriously. Recently, a judge dismissed your Police Accountability Unit's high-profile prosecution of crooked police officer Joseph Franco based on the deputy chief's repeated failures to disclose evidence. In response, you quickly removed that prosecutor from her role, with your spokesman Doug Cohen saying, "New Yorkers must know that law enforcement, including prosecutors, are acting with the utmost integrity. We hold ourselves accountable to that standard."[2]

Taking such accountability in the present case would mean agreeing to dismiss this prosecution (and holding the responsible ADAs to account). This case is worse than Joseph Franco's. The prosecutors here did not just fail to disclose discoverable materials but deliberately concealed *Brady* material that destroyed the complainant's credibility and directly corroborated the defense theory. They did not just withhold evidence but used the defense's ignorance of that evidence to aid their witness's apparent perjury, which, in their zeal to obtain a conviction, they deliberately presented. And Mr. Tripathy did not have the benefit of having his case tossed before trial but rather languished in prison for 4 ½ years while the Appeals Bureau defended his rotten conviction. Allowing this prosecution to proceed after such an extraordinary corruption of the judicial process, and after the defendant has served most of his wrongful sentence, would signal that the "integrity" Mr. Cohen spoke of is just an empty buzzword.

I would add that, while this indictment should be dismissed because it was obtained based upon false or misleading testimony in the grand jury and because of the subsequent egregious misconduct by your office, the case is not viable in its present posture. The prosecution's sole witness is discredited as a calculating liar. She will be impeached at any trial with the testimony of your prosecutors, whom we will call as witnesses, as well as with the documents. Indeed, the PCJU notes show that PCJU attorneys told M.R. about Tripathy's version of events and that M.R., learning for the first time that Tripathy had denied any sexual assault but admitted hitting her after she tried to extort him, was surprised by the revelation, and didn't dispute it. M.R. told the PCJU she previously had thought "he never took any fault," and she "did not refute what ADA Anania stated Tripathy alleged on the stand or provide her version of events." This was an implicit admission that Mr. Tripathy is innocent of the sex offense.

---

[1] Chad Bray, *Sex-Crimes Unit's Lapses Trip Up Cases*, Wall Street Journal, July 5, 2011, http://online.wsj.com/article/SB10001424052702304760604576426273960142438.html.

[2] Jonah E. Bromwich & Maria Cramer, *Botched Prosecution Lets Notorious Ex-Detective Walk Free*, N.Y. Times, Jan. 31, 2023, https://www.nytimes.com/2023/01/31/nyregion/joseph-franco-nypd-case-dismissed.html.

Finally, I was distressed to hear ADA Lucey argue to the court during a conference on March 3, 2023, that your office is comfortable proceeding with this prosecution because the Appellate Division previously upheld the prosecutors' conduct in this case. For Ms. Lucey to be appearing on this case—knowing her role in vetting M.R., and after not responding to my 17-page letter—was bad enough. But it is appalling that she would rely on the Appellate Division's flawed analysis about the materiality of the suppressed documents after your office, by agreeing to vacate the conviction, acknowledged the Appellate Division was wrong. Indeed, when Mr. Tripathy appealed, he had no opportunity to make full argument based on the content of the documents because they had been suppressed. Further, we now know, due to further discovery, that the suppression of *Brady* and *Rosario* material was far more extensive than the Appellate Division knew. For the Sex Crimes Unit now to hide behind the Appellate Division's decision, which you implicitly disavowed with when you agreed to vacate the conviction, is not just unscrupulous but also insubordinate.

Mr. Tripathy has no wish to attract additional attention to this case, which is part of why I am writing to you in the hope you will agree to dismiss it. However, should the prosecution continue, we intend to pursue all available avenues, including moving to dismiss due to deliberate prosecutorial misconduct intended to prevent a likely acquittal and in the interest of justice, requesting an evidentiary hearing on your office's misconduct, seeking the involvement of outside groups concerned with prosecutorial ethics, and other available remedies.

I would be happy to meet with you at your convenience to discuss this further. Thank you for your consideration.

Very truly yours,

Joel B. Rudin

Joel Rudin

Enclosure

cc: Meg Reiss (by Federal Express)
Chief Assistant District Attorney